**In the Matter of: E.B.**

**Appeal of: S.M.**

Superior Court of Pennsylvania.

Submitted Dec. 5, 2005.
Filed May 3, 2006.

---

Edward M. Flannery, Philadelphia, for appellant.

Robert D. Aversa, Philadelphia, for Dept. of Human Services, Participating Party.

BEFORE: TODD, BOWES and TAMILIA, JJ.

OPINION BY TAMILIA, J.:

¶ 1 Mother, S.M., appeals from the March 2, 2005 Order adjudicating her daughter E.B., born May 8, 1992, dependent and directing that agency supervision continue over the child, who was to remain in mother's care.

¶ 2 The record reveals the following factual and procedural history. The family became known to the Department of Human Services (DHS) on October 1, 2004, when it received a Child Protective Services Report indicating that one of mother's three minor children, S.M.,[1] had left home due to allegations that mother's paramour, Joseph Thomas, with whom the family had been living, made sexual advances toward the child. N.T., 11/10/04, at 5–6, 9–10. As a result, S.M. had relocated to her paternal grandmother's home. *Id.* at 6. A DHS employee went to the grandmother's home and spoke with S.M., who confirmed the allegations. *Id.* at 6–7. DHS obtained a restraining Order to keep Thomas from the child, and formally placed S.M. with the paternal grandmother. *Id.* at 7–8, 10, 22.

¶ 3 Mother and the other two children, E.B. and D.M., initially moved from Thomas' home to a shelter. *Id.* at 8–11. Ultimately, she rented a home where she, E.B., and D.M. lived, and which DHS found to be appropriate. *Id.* at 12–13.

¶ 4 DHS filed a dependency petition first as to S.M., and a week later, filed another as to D.M. and E.B. *Id.* at 21. An adjudicatory hearing was held on November 10, 2004 as to all three children.

¶ 5 S.M., who was fourteen years old at the time of the hearing, testified that Thomas told her he thought about her sexually. She told her mother but she did not feel her mother believed her and her mother took no action. After that, Thomas pushed her down on the bed, pinned her hands, and kissed her "and stuff." As a result of these incidents, S.M. left the home and went to live with her grandmother. *Id.* at 32–33, 36–38, 40. S.M. testified that Thomas looked at her and E.B. in a way that made both of the children uncomfortable. *Id.* at 33, 38–39. Thomas' conduct bothered S.M. to the point where she hurt herself by cutting her wrist. *Id.* at 35. She also testified that when the family lived with Thomas, she observed Thomas selling drugs from the home, and that he took the family to New York on a drug-related trip. *Id.* at 34–35.

¶ 6 Also at the hearing, DHS social worker Saundra Stepney expressed ongoing concerns as there was evidence of continued contact between Thomas and E.B. and D.M.; mother did not believe S.M.'s allegations; mother admitted to marijuana use; and Stepney was concerned that mother continue therapy for the children but noted that she had been inconsistent in doing so. *Id.* at 13–16, 28–29, 44. Stepney also testified that mother refused to cooperate with DHS to allow services in the home to monitor the children, although she was willing to accept items from DHS such as a refrigerator and bed. *Id.* at 26–28.

¶ 7 Following the hearing, the court found mother failed to exercise parental control to protect S.M. from Thomas, such that there was clear and convincing evidence of dependency as to S.M. The court

---

1. Because the appellant mother has the same initials as one of her children, we will refer to mother as "mother" throughout this Opinion, and to the child as "S.M."

however did not find clear and convincing evidence of E.B.'s dependency at that time but instead deferred adjudication on the matter so that DHS could determine *"whether or not this fellow, Mr. Thomas is, in fact, out of their lives." Id.* at 57–58 (Emphasis supplied). S.M. was ordered to remain with grandmother and E.B. and D.M. were to remain with mother. The court issued a stay-away Order against Thomas as to all three children. *Id.* at 59.

¶ 8 The next hearing was held four months later, on March 2, 2005. At the hearing, Belinda Edwards, a social worker from an organization called "SCOH," stated that on her initial visit to mother's house on February 14, 2005, Thomas called and spoke with mother. N.T., 3/2/05, at 19. Mother indicated Thomas lived approximately five blocks from her home, and that she saw him approximately once a week but the children had not seen him since before the November hearing. E.B. stated she was not comfortable with Thomas, but last saw him a "long time ago." *Id.* at 22–24. The court asked mother if she planned to abide by the stay-away Order. Mother stated that she did "[b]ecause this is what your Honor said, and I don't want to go—[.]" *Id.* at 23. The court explained that if it discharged the case, it was up to her to enforce the Order. Mother explained "if my child has to feel uncomfortable around him [Thomas], I don't want them around him." *Id.* The court believed mother was influenced more by court authority and doubted her commitment to keep Thomas out of E.B.'s life. It found incredible her testimony that she would enforce the Order absent the court's intervention. *Id.* at 35; *see also* Trial Court Opinion, Djerassi, J., 6/30/05, at 5. The

court found clear and convincing evidence E.B. was dependent based upon its finding of clear evidence of mother's continued contact with Thomas, and its finding that it could not count on mother to enforce the stay-away Order, thereby providing for the child's safety, without continued court intervention. N.T., 3/2/05, at 30–33, 38–39, 65. The court did not place the child, however, but allowed her to remain with mother. *Id.* at 37–38. This timely appeal followed.

¶ 9 On May 4, 2005, following testimony from DHS and Pathways social workers and from mother and child, the court found "no safety issues or other grounds for dependency." It thus discharged supervision and discharged the petition. Trial Court Order, Djerassi, J., 5/4/05. Counsel for the child did not file a brief in this appeal because the child was determined to be safe, with her needs being met, and because the dependency petition was discharged and therefore the issues are moot.[2] DHS likewise declined to file a brief.

¶ 10 Mother raises three issues for our review:

1. Did the trial court err in finding that the Department of Human Services had proven that the child was dependent by clear and convincing evidence?

2. Did the trial court err by basing its adjudication of dependency upon a finding of Mother's credibility which shifted the burden of proof from the Department of Human Services to the Mother?

**2.** Although the mootness doctrine is implicated here, *see In re D.A.*, 801 A.2d 614, 616–617 (Pa.Super.2002), an exception to the doctrine applies, since due to the adjudication, mother will suffer a detriment in any future proceedings with DHS. *Id.* Thus, we reach the merits of this case.

3. Did the trial court err by assuming facts not in evidence?

Mother's brief at 3.[3]

¶ 11 We apply the following standard and scope of review when faced with an appeal from a trial court's dependency determination:

> The standard of review which this Court employs in cases of dependency is broad. However, the scope of review is limited in a fundamental manner by our inability to nullify the fact-finding of the lower court. We accord great weight to this function of the hearing judge because he is in the position to observe and rule upon the credibility of the witnesses and the parties who appear before him. Relying upon his unique posture, we will not overrule his findings if they are supported by competent evidence.

*In re D.A.*, 801 A.2d 614, 617–618 (Pa.Super.2002), *quoting In re B.B.*, 745 A.2d 620, 622 (Pa.Super.1999).

¶ 12 Although in its dependency petition DHS did not indicate the specific statutory ground for seeking a dependency status for E.B., it is clear the section was 42 Pa.C.S.A. § 6302, **Definitions, "Dependent Child"** (1), which provides a child is dependent who

> is without proper parental care or control, subsistence, education as required by law, or other care or control necessary for his physical, mental, or emotional health, or morals. A determination that there is a lack of proper parental care or control may be based upon evidence of conduct by the parent, guardian or other custodian that places the health, safety or welfare of the child at risk, including evidence of the parent's, guardian's or other custodian's use of alcohol or a controlled substance that places the health, safety or welfare of the child at risk[.]

*Id.*[4] As to an allegation of dependency, our Supreme Court has stated,

> A court is empowered by 42 Pa.C.S.A. § 6341(a) and (c) to make a finding that a child is dependent if the child meets the statutory definition by clear and convincing evidence. If the court finds that the child is dependent, then the court may make an appropriate disposition of the child to protect the child's physical, mental and moral welfare, including allowing the child to remain with the parents subject to supervision, transferring temporary legal custody to a relative or a private or public agency, or transferring custody to the juvenile court of another state. 42 Pa.C.S.A. § 6341(a).

*In re D.A.*, at 617, *quoting In re M.L.*, 562 Pa. 646, 649, 757 A.2d 849, 850–851 (2000).

¶ 13 We first find that dependency as to E.B. was established by clear and

---

**3.** We first note this appeal is properly before this Court. It is well-settled that "an appeal lies only from a final Order, unless otherwise permitted by rule or by statute." *In the Interest of H.S.W.C.-B*, 575 Pa. 473, 475, 836 A.2d 908, 909 (2003). In *H.S.W.C.-B.*, our Supreme Court held "[a]n Order granting or denying a status change... shall be deemed final when entered." *Id.* at 477, 836 A.2d at 911. An adjudication of dependency is a change of status. *See In re D.A., supra*) (explaining that the subject child's "status" as a dependent child had been dissolved). In *In re D.A.*, this Court entertained the appeal from an Order adjudicating the subject child to be dependent as it has in countless cases. *See also, e.g., In re M.W.*, 842 A.2d 425 (Pa.Super.2004). Accordingly, we find this appeal is properly before us.

**4.** It is also clear that the court determined S.M. was dependent based upon this provision of 42 Pa.C.S.A. § 6302, when it stated "[t]here was a lack of parental control" which provided clear and convincing evidence of dependency in the matter. N.T., 11/10/04, at 57.

convincing evidence in this case *as of the November 10, 2004 hearing.* Prior to the November 10, 2004 hearing, E.B.'s sibling, S.M., informed her mother that Thomas had made sexual advances toward her, yet mother did not believe the child, and took no action. N.T., 11/10/04, at 15, 32, 36–37. Thomas' behavior toward S.M. escalated in aggressiveness until she left home because of it. *Id.* at 32–33, 36–38. Yet mother still permitted Thomas to be around the other two children. *Id.* at 14, 44. According to her own testimony, mother cut off contact between Thomas and E.B. not of her own volition but rather based upon the court's stay-away Order. N.T., 3/2/05, at 22–23. In *In re M.W.,* 842 A.2d 425 (Pa.Super.2004), this Court affirmed an adjudication of dependency as to the siblings of a child who had been sexually abused by the father, even though the subject children had not been sexually abused. We held that the focus is not on whether the other siblings are at risk of sexual abuse themselves, but rather "whether the siblings fit the broader definition of lacking 'proper parental care or control, subsistence, education as required by law, or other care or control necessary for his physical, mental or emotional health, or morals.' " *Id.* at 429, *citing* 42 Pa.C.S.A. § 6302. We concluded it was within the trial court's discretion to determine that siblings of sexually abused children fit the definition, even if there is no evidence the siblings themselves were sexually abused. *Id.* at 429. The trial court in *In re M.W.* concluded the siblings in that case met the definition since the mother, after being made aware of the abuse, permitted the father into the home and to have unsupervised contact with the children. *Id.* This case is similar in that mother did not act upon S.M.'s allegations but rather continued to allow Thomas access to the children until the court intervened.

¶ 14 The court here did not adjudicate E.B. dependent on November 10, 2004, but rather, deferred adjudication until after hearing evidence on March 2, 2005, as to whether Thomas was in fact out of the children's lives. After hearing testimony, particularly mother's own testimony, the court concluded it could not trust mother to enforce the stay-away Order absent court intervention, and thus adjudicated the child dependent to allow further monitoring. *See* Trial Court Opinion at 10–11, *see also In the Interest of J.M.,* 438 Pa.Super. 409, 652 A.2d 877, 880–881 (1995) (reiterating that the hearing court is in the best position to evaluate the credibility of witnesses). We note that the adjudication was also based upon other factors, one being mother's disbelief of S.M.'s allegations as to Thomas, and also, in part, on mother's continued relationship with Thomas. Trial Court Opinion, at 12. According to the court, however, "the key question was whether Mother could be relied upon to enforce an existing stay-away Order." *Id.* at 10. It concluded she could not.

¶ 15 We find the court had clear and convincing evidence as of November 10, 2004 to adjudicate E.B. dependent, and did not err in doing so on March 2, 2005. We now proceed to address mother's allegations of error.

■ ¶ 16 As to the first issue, mother presents multiple arguments. First, she argues that since child's counsel and DHS agreed to defer proceedings on the dependency petition, with continued supervision of the child, and requesting a five month date to review a possible discharge at that time, an adjudication of dependency was unnecessary to obtain supervision of the child. She maintains that since "supervision was available without an adjudication, this Court must reverse the trial court's determination based upon that conclusion."

Appellant's brief at 8. In mother's brief argument as to this contention, she cites absolutely no supporting legal authority; thus we find it is waived. *See Nemirovsky v. Nemirovsky,* 776 A.2d 988, 994 (Pa.Super.2001) (finding waived an issue in the appellant's brief where the brief contained only "a cursory, four sentence argument" and no citation to case law on that issue).

¶ 17 Also, as to this first issue, appellant argues the trial court's adjudication of dependency provided less protection for the child than the five months of supervision the parties had agreed upon. She contends a shorter period of supervision can not be deemed to be in the child's best interests, thus the trial court erred. As authority, mother cites *In re Lowry,* 506 Pa. 121, 484 A.2d 383 (1984), in which our Supreme Court stated that in construing the Juvenile Act, "that result which will encourage, rather than discourage, action related to the best interests and protection of the child, is preferred." *Id.,* at 130–131, 484 A.2d at 388. Presumably, her argument is based upon the court's March 2, 2005 Order providing for review two months hence, on May 4, 2005. Certainly the court's action, which provided for supervision to ensure the perpetrator of sexual advances to E.B.'s sibling was not allowed access to E.B., did not "discourage" action related to the best interests and protection of the child. Further, mother cites no authority which supports her apparent contention that the duration of the supervision is the determining factor of what is in the child's best interests. At the time of the March 2, 2005 hearing, the court apparently found dependency and supervision to be in the child's best interests. After hearing evidence at the review hearing two months later, the court could have determined continued supervision was in the child's best interest, but it did not. It apparently decided, rather, that the child was safe and her best interests were served by ceasing court intervention. We reject mother's bald allegation that the court was required to choose an option providing for the longest period of supervision.

¶ 18 Mother also presents a three-pronged argument that the adjudication violated her constitutional rights. In the first prong, she contends the trial court's adjudication conflicted with her constitutional right to privacy, which she argues must be balanced against the state's interest. She argues the agreement providing for five months of supervision was more effectual in promoting the state's interest of protecting the child, and less intrusive. She says "no state interest has been given to justify this intrusion," thus it is gratuitous, and an abuse of the court's discretion. Appellant's brief at 11.

¶ 19 Mother relies heavily on the case of *In re T.R.,* 557 Pa. 99, 731 A.2d 1276 (1999), in which our Supreme Court reversed an Order requiring the mother in a dependency proceeding to undergo a psychological evaluation and disclose the results to the parties. The Court found there was no state interest that justified such an intrusion on mother's right to privacy, particularly where there was an abundance of information as to mother's ability to parent. *Id.* at 108–109, 731 A.2d at 1281–1282. This case is certainly distinguishable. It did not involve the disclosure of such personal information; rather it involved the in-home monitoring of a child whose health, safety, and welfare the court believed to be at risk.

¶ 20 We first note that the court was justified to declare the child dependent if the statutory provisions were met, in this case, if the child was without the proper parental care or control such that her health, safety or welfare was at risk. *See* 42 Pa.C.S.A. § 6302, **"Dependent Child,"**

(1). We already have concluded that the statutory requirements were met in this matter. Section 6351, **Disposition of a dependent child**, specifically authorizes the court to, as it did in this case, "[p]ermit the child to remain with his parents, guardian, or other custodian, subject to conditions and limitations as the court prescribes, *including supervision* as directed by the court for the protection of the child." 42 Pa.C.S.A. § 6351(a)(1) (Emphasis supplied).

¶ 21 In any event, it is true that one of the recognized privacy interests is the "interest in independence in making certain kinds of important decisions," i.e., the "right to be let alone," and that the right to privacy must be balanced against the state's interests. *In re T.R.,* at 105–106, 731 A.2d at 1279–1280. We further agree that mother's right to privacy is implicated here but certainly, the state has an interest in protecting the health, safety and welfare of a child. We also conclude the state's interest justified the intrusion in this case. Mother argues the court was required to select the "less intrusive" option of adhering to an agreement providing for five months of supervision. We note, however, that whether the court chose to enforce the parties' agreement or to adjudicate the child dependent, DHS and SCOH were to be involved with and monitor the family, and the child was to remain in the home. In either scenario, there was to be an intrusion in mother's privacy. The court's action resulted in only two months of supervision. Mother's argument the court was required to select the option providing for the longest period of supervision would have resulted in an arguably more intrusive scenario. In any event, the intrusion in this case was justified as it was based on the court's concern that mother continued to expose her children to a man who made sexual advances to one of her children. The state's interest

was clearly in promoting the child's best interests and the court selected the option it concluded best effectuated those interests. We find the court committed no error in this regard.

■ ¶ 22 In the next prong, mother asserts the trial court's adjudication conflicted with her constitutional right of freedom of assembly. In this very brief argument, mother cites absolutely no authority to support her contention that a court's adjudication of dependency based primarily upon mother's continued relationship with, and exposure of her children to, a man who made sexual advances to another one of her children, violates the parent's right of freedom of assembly. We thus would be justified in finding this argument waived. *See Nemirovsky, supra.* We note, however, mother argues there must be a compelling state interest and no alternative, less intrusive, method to effectuate the interest. We find the state's interest in protecting the child was, in fact, compelling, and the method chosen to effectuate that interest was not inappropriately intrusive.

¶ 23 Lastly as to this issue, mother argues the court's adjudication conflicted with her constitutional rights of due process because she understood that the court's November 10, 2004, Order required Thomas to have no contact with the children, but she was permitted to have contact with Thomas. She contends the court's adjudication was based upon continued contact between her and Thomas. We agree with the court that this is a mischaracterization of its holding. The court's decision was quite apparently based upon multiple factors, as stated *supra.* Those factors *included* mother's disbelief of S.M.'s allegations as to Thomas, and her continued relationship with Thomas. Trial Court Opinion, at 12. But ac-

cording to the court, "the key question was whether Mother could be relied upon to enforce an existing stay-away Order." *Id.* at 10. Mother's March 2, 2005 testimony did not convince the court that she would do so. *Id.* at 10–11; *see also In the Interest of J.M.,* 438 Pa.Super. 409, 652 A.2d 877, 880–881 (1995) (reiterating that the hearing court is in the best position to evaluate the credibility of the witnesses). In any event, we find clear and convincing evidence existed to support the adjudication of dependency as of November 10, 2004. Thus, we reject this allegation.

██ ¶ 24 Next, mother contends the court erred in shifting the burden of proof to her. Specifically, she discounts the first two factors upon which the court based its adjudication, i.e. mother's discrediting, and failure to act upon, S.M.'s allegations as to Thomas, and mother's continued relationship with Thomas. She maintains, therefore, that the sole basis for the adjudication was the court's credibility determination as to mother, which she says erroneously shifted the burden of proof from DHS to her. The court heard testimony and made a credibility determination. Such determinations are within the court's province. *See In the Interest of J.M., supra.* DHS had the burden, and we find it met its burden.

¶ 25 In her final issue, mother asserts the court erred by assuming facts not in evidence. Specifically, she argues the court assumed S.M. *repeatedly* complained to mother as to her allegations against Thomas, but says "there is no indication that she complained to her Mother on more than one occasion." Appellant's brief at 18. We agree S.M. did not testify that she *repeatedly* complained to her mother as to Thomas' conduct. Any such error on the trial court's behalf is inapposite since we find a parent's disregard of even just one allegation of a sexual ad-

vance by an adult should alert a parent to take action to protect her children. Significantly, it was *after* S.M. informed her mother that Thomas told her he thought of her sexually and her mother disregarded the information, that Thomas became more aggressive toward S.M. and pinned her to the bed. We therefore reject this allegation of error.

¶ 26 Order affirmed.