J-S37001-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: A.H.S., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: L.S., FATHER | : | No. 3586 EDA 2014 |

Appeal from the Dispositional Order November 18, 2014
In the Court of Common Pleas of Philadelphia County
Juvenile Division at No(s): CP-51-DP-0002548-2014

BEFORE: GANTMAN, P.J., SHOGAN, J., and LAZARUS, J.

MEMORANDUM BY GANTMAN, P.J.:                    **FILED JUNE 16, 2015**

Appellant, L.S. ("Father"), appeals from the order entered in the Philadelphia County Court of Common Pleas, which adjudicated his minor daughter, A.H.S. ("Child"), dependent and committed her to the Department of Human Services ("DHS"). We affirm.

The trial court opinion sets forth the relevant facts and procedural history of this case as follows:

> On October 27, 2014, DHS received a General Protective Service ("GPS") report alleging that Child's mother[, S.H. ("Mother"),] was found incoherent, on the ground and under the influence of marijuana and PCP. Child was found unattended in her stroller and was taken by neighbors, who called the police. Mother was arrested and escorted together with Child to Temple University Hospital ("TUH"). Mother refused to provide her name to the officers but provided Child's grandmother's name and telephone. However, according to DHS' investigation, grandmother appeared as a perpetrator of a separate indicated Child Protective Service ("CPS") report. As a result, Child's grandmother was ineligible to assume Child's care. Mother provided other caregivers' names

[who] were also ineligible. On October 28, 2014, DHS obtained an Order for Protective Custody ("OPC") for Child.[1] Child was placed in foster care…, where she currently remains. At the Shelter Care Hearing on October 30, 2014, the court lifted the OPC, maintained Child committed to DHS and set November 18, 2014, at 11 A.M., as the date for Child's adjudicatory hearing. On November 18, 2014, a prehearing conference took place at 10:30 A.M. without Father and Father's attorney's participation. Child's mother, Child's mother's attorney, DHS' attorney, and [the] Child [A]dvocate were present at the pre-hearing conference. The parties fully agreed to adjudicate Child dependent. The case was called at 11:30 A.M. but the parties were not ready since Father's attorney indicated that Father may be coming and the trial court was hearing other cases. [The c]ase was pushed back. At 1:14 P.M. Child's adjudicatory hearing began with all parties present, including Father's attorney, except Father had not shown up. DHS' city solicitor presented the full agreement reached by the parties, Father's attorney did not object to the agreement since he had no position due to Father not being present. The trial court accepted the parties' agreement and stipulation of the facts on the petition of adjudication. Father was granted weekly-supervised visitation. Child was adjudicated [dependent] based on the present inability of the parents [to care for Child]. The adjudicatory hearing finished at 1:23 P.M., without Father even appearing at the bar of the court. On November 24, 2014, Father's attorney filed a Motion for Reconsideration alleging that Father is ready, willing and able to assume Child's care and that Father could not attend the adjudicatory hearing because he was paying child support on another floor, at the same time of the hearing. The trial court denied Father's…Motion for Reconsideration [on December 1, 2014]. On December 1[5], 2014, Father's attorney filed a timely notice of appeal [and Pa.R.A.P. 1925(a)(2)(i) concise statement of errors complained of on appeal], arguing that the court committed a reversible error, in finding without clear and convincing evidence that Father was not ready and available to assume Child's care. At the permanency

---

[1] Child was living with Mother at this time. Mother and Father do not reside together.

review hearing, on February 3, 2015, the court found Father in non-compliance with his permanency plan.

(Trial Court Opinion, filed February 20, 2015, at 1-2) (internal footnotes omitted).

Father raises one issue for our review:

WHETHER THE ADJUDICATION OF DEPENDENCY SHOULD BE REVERSED WHERE THE CITY OF PHILADELPHIA FAILED TO PROVE BY CLEAR AND CONVINCING EVIDENCE THAT THE CHILD WAS PRESENTLY WITHOUT PROPER PARENTAL CARE AND CONTROL?

(Father's Brief at 7).

Our standard and scope of review from an adjudication of dependency is as follows:

The standard of review which this Court employs in cases of dependency is broad. However, the scope of review is limited in a fundamental manner by our inability to nullify the fact-finding of the [trial] court. We accord great weight to this function of the hearing [court] because [it] is in the position to observe and rule upon the credibility of the witnesses and the parties who appear before [it]. Relying upon [the court's] unique posture, we will not overrule [its] findings if they are supported by competent evidence.

*In re E.B.*, 898 A.2d 1108, 1112 (Pa.Super. 2006) (quoting *In re D.A.*, 801 A.2d 614, 617-18 (Pa.Super. 2002) (*en banc*)).

Father asserts the court based its decision, to adjudicate Child dependent, on the parties' stipulation to the statement of facts in DHS' dependency petition. Father argues DHS' statement of facts focuses primarily on Mother's actions on October 27, 2014. Father maintains DHS

failed to investigate Father as a potential caregiver for Child. Father claims DHS did not utilize reasonable efforts to locate and interview Father as a resource. Father concludes DHS did not establish that Child is dependent by clear and convincing evidence, and this Court must reverse the adjudication of dependency. We disagree.

The Juvenile Act defines a dependent child, in pertinent part, as follows:

> **§ 6302.  Definitions**
>
> **"Dependent child."**  A child who:
>
> (1) is without proper parental care or control, subsistence, education as required by law, or other care or control necessary for [her] physical, mental, or emotional health, or morals.  A determination that there is a lack of proper parental care or control may be based upon evidence of conduct by the parent, guardian or other custodian that places the health, safety or welfare of the child at risk, including evidence of the parent's, guardian's or other custodian's use of alcohol or a controlled substance that places the health, safety or welfare of the child at risk[.]

42 Pa.C.S.A. § 6302.  A court may adjudicate a child as dependent if the child meets the statutory definition by clear and convincing evidence.  ***E.B., supra***.  "[W]here a non-custodial parent is ready, willing and able to provide adequate care to a child, a court may not adjudge that child dependent."  ***In re M.L.***, 562 Pa. 646, 650, 757 A.2d 849, 851 (2000).

> If the court finds that the child is dependent, then the court may make an appropriate disposition of the child to protect the child's physical, mental and moral welfare, including allowing the child to remain with the parents

subject to supervision, transferring temporary legal custody to a relative or a private or public agency, or transferring custody to the juvenile court of another state.

*E.B., supra* at 1112.

Additionally:

In order to preserve an issue for appellate review, a party must make a timely and specific objection at the appropriate stage of the proceedings before the trial court. Failure to timely object to a basic and fundamental error will result in waiver of that issue. On appeal, the Superior Court will not consider a claim which was not called to the trial court's attention at a time when any error committed could have been corrected. In this jurisdiction one must object to errors, improprieties or irregularities at the earliest possible stage of the adjudicatory process to afford the jurist hearing the case the first occasion to remedy the wrong and possibly avoid an unnecessary appeal to complain of the matter.

*In re J.A.*, 107 A.3d 799, 820 (Pa.Super. 2015) (quoting *In re S.C.B.*, 990 A.2d 762, 767 (Pa.Super. 2010)) (holding mother waived challenge to court's failure to conduct hearing prior to appointing medical guardian for child, where mother did not request hearing at appropriate stage of proceedings).

Instantly, the court held a shelter care hearing on October 30, 2014, which Father attended. At the conclusion of the hearing, the court ordered Child to remain in the custody of DHS. The court scheduled the next proceeding to take place on November 18, 2014, at 11 a.m. in Courtroom M. Additionally, DHS' dependency petition expressly informed Father a pre-hearing conference would occur on Tuesday, November 18, 2014, at 10:30

a.m. in room 310; an adjudicatory hearing would occur on that date at 11 a.m. in Courtroom M. The dependency petition also stated: "**If you do not attend the pre-hearing conference, decisions about your child may be made without you.**" (Dependency Petition, filed 10/31/14, at 1) (emphasis in original). The dependency petition further advised: "**Failure to appear at this [adjudicatory] hearing may result in the issuance of a bench warrant for your arrest.**" (*Id.*) (emphasis in original).

On November 18, 2014, the court held a pre-hearing conference at the scheduled time. Father received notice, but he failed to appear. Mother, Mother's counsel, DHS' attorney, and the Child Advocate attended the pre-hearing conference. At that time, those parties agreed to adjudicate Child dependent. Thereafter, Father's counsel informed the court that Father might be on his way to court. The adjudicatory hearing was scheduled for 11 a.m., but the court rescheduled the adjudicatory hearing until later that afternoon in an effort to accommodate Father.

The adjudicatory hearing began at 1:14 p.m. Notwithstanding Father's receipt of notice and Father's counsel's representation to the court that Father might be on his way to court, Father failed to attend the hearing. The parties subsequently informed the court they had reached an agreement to adjudicate Child dependent and to commit Child to DHS' custody, based on Mother and Father's present inability to care for Child. Significantly, Father's attorney did not object to the agreement to adjudicate Child

dependent. The parties further informed the court that Child (who was 7-months-old at the time of the hearing) had a hernia that was being treated at Temple Pediatrics and needed a clothing voucher. The court also heard Child was safe in foster care and having her needs met. The Child's Advocate and Mother's counsel both agreed to adjudicate Child dependent. The court then asked Father's counsel if he had anything to add. Father's counsel responded: "No, Your Honor." (N.T. Dependency Hearing, 11/18/14, at 8). Consequently, the court adjudicated Child dependent by stipulation of the parties.

In addressing Father's complaint on appeal, the trial court reasoned:

> In the Motion for Reconsideration filed by Father's attorney, it was alleged that Father was not present at the adjudicatory hearing because he was paying child support in the courthouse on another floor. Father's excuse is without any merit. The record established that Father knew the exact date and time [at] which the hearing would take place since he was present at the shelter care hearing. Even assuming Father was present in the courthouse as he claims, he would have had sufficient time to pay child support and then attend his Child's adjudicatory hearing. The office that receives child support payments opens at 9:00 A.M. and closes at 4:30 P.M. The pre-hearing conference began at 10:30 A.M., with the adjudicatory hearing being pushed back to 1:14 P.M. and finishing at 1:23 P.M. Not only did Father fail to attend, but he also failed to introduce evidence of his capacity and readiness to assume Child's custody. Furthermore, he was unwilling to cooperate with DHS. The only fact stipulated about Father was that he currently resides at his aunt's home. Under these facts and Father's lack of appearance at court, the trial court could not find Father to be ready, willing and able to assume Child's care. Child's safety and proper parental care and control are

- 7 -

primary considerations for the trial court to take into account.

\* \* \*

[T]he record established that at the pre-hearing conference the parties reached a full agreement to adjudicate Child dependent due to parents' present inability to assume Child's care. Later, during the adjudicatory hearing, DHS' attorney presented to the court the parties' agreement by stating "your honor we have a full agreement today for Child, who is seven months old, to adjudicate her dependent, commit her to DHS, and discharge the temporary commitment. She is currently in a foster home…. The basis of the adjudication is present inability." (N.T. 11/18/14, pgs. 3-4). The record further establishes that the trial court accepted the parties' stipulation without any objection from Father's attorney. Consequently, the court's adjudication order was entered based on a valid agreement of the parties pursuant to Pa.R.J.C.P. 1405(A)(1)(6).

\* \* \*

The record left no doubt that prior to making a decision, the trial court asked Father's attorney[,] "do you have anything to add?" but Father's attorney answered "no." (N.T. 11/18/14, pg. 8). Father's attorney's failure to object at the appropriate stage of the proceedings failed to preserve the issue for appellate review. Consequently, Father has waived his right to appeal any of the issues as listed on his [concise statement]. Even assuming that Father did not waive his [issues], Father's issues on appeal are without merit since the allegations in the dependency petition were clear and convincing for the trial court to make a determination of adjudication on present inability of the parents.

(Trial Court Opinion at 3-4) (some internal citations omitted). We agree that

Father waived his challenge to the court's adjudication of dependency where

he failed to object to the agreement to adjudicate Child dependent at the

appropriate stage of the proceedings. ***See J.A., supra***.

Moreover, Father had ample notice of the scheduled pre-hearing conference and adjudicatory hearing, but he simply failed to attend. The court even pushed back the scheduled adjudicatory hearing to accommodate Father, but he still did not show. Father's complaint on appeal that DHS failed to investigate Father as a potential caregiver for Child is disingenuous, where Father had an opportunity to present evidence of his ability to care for Child at the adjudicatory hearing and waived that chance.

Furthermore, DHS' dependency petition alleged that Mother uses drugs and Child is at risk of further neglect in her care and that DHS had been unable to assess Father's ability to care for Child. The court accepted the facts alleged in DHS' dependency petition stating, *inter alia*: (1) on October 27, 2014, DHS received a GPS report alleging Mother was found incoherent on the ground under the influence of drugs while Child was left unattended in her stroller; neighbors took Child and called the police; police took Mother and Child to Temple University Hospital, and police arrested Mother; a foster care agency assumed care of Child; (2) on October 28, 2014, DHS obtained an order of protective custody for Child and placed her in a foster home; (3) on October 30, 2014, the court lifted the order of protective custody and ordered the temporary commitment to DHS to stand; (4) Mother has a history of mental illness; (5) Father resides with his aunt and stated he wanted to care for Child; (6) DHS recommends that Child be committed to

the care of DHS. The court determined DHS proved the alleged facts by clear and convincing evidence. Based on the parties' agreement and Father's failure to provide evidence of his present ability to care for Child, the court adjudicated Child dependent. **See** Pa.R.J.C.P. 1405(a)(1), (a)(6) (stating at any time after filing of dependency petition any party may present stipulations or agreements by all parties to court in writing or orally on record regarding findings of fact to be deemed admitted by parties; or any other stipulation or agreement found to be appropriate by court); Pa.R.J.C.P. 1408 (explaining after hearing evidence on dependency petition or accepting stipulated facts by parties, court shall enter finding by specifying which, if any, allegations in petition were proved by clear and convincing evidence). The record support's the court's adjudication of dependency for Child.[2] **See** 42 Pa.C.S.A. § 6302; **E.B., supra**. Accordingly, we affirm.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/16/2015

---

[2] The record shows that at the time of the February 3, 2015 permanency review hearing Father was completely not compliant with the permanency plan and believed to be incarcerated.