J-A01029-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INT. OF: C.B.-T., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: L.T., MOTHER | : | No. 1176 MDA 2021 |

Appeal from the Dispositional Order Entered August 4, 2021
In the Court of Common Pleas of York County
Juvenile Division at No(s):  CP-67-DP-302-2021

BEFORE:  LAZARUS, J., NICHOLS, J., and KING, J.

MEMORANDUM BY KING, J.                    **FILED: JANUARY 31, 2022**

Appellant, L.T. ("Mother") appeals from the dispositional order entered in the York County Court of Common Pleas, which adjudicated her minor child, C.B.T. ("Child") dependent.  We affirm.

The relevant facts and procedural history of this case are as follows.  At the time of Child's birth, Mother tested positive for fentanyl and methadone.  Child had symptoms of withdrawal immediately after birth.  Due to concerns for the safety of Child, the York County Office of Children, Youth and Families ("CYF") filed an application for emergency protective custody.  CYF was awarded temporary legal and physical custody of Child upon discharge from the hospital.

A dependency hearing took place on July 23, 2021 and August 4, 2021.  At the time of the hearing, Mother had two other children, A.B. and C.B., who were already in CYF custody in kinship placement.  The trial court conducted

a permanency review hearing of Child's siblings at the same time as the dependency hearing.

Regina Fike, a parent educator and family advocate at Pressley Ridge, testified that Mother successfully completed trauma parenting classes. A crisis team was put into place to assist Mother because she was evicted from her apartment and under a high level of stress towards the end of her pregnancy. Ms. Fike testified that Mother was not currently employed but intended to find work as soon as possible.

Yashira Luciano testified that she was the family advocate assigned to supervise visits between Mother and her children. Ms. Luciano reported that eight visits had been scheduled but Mother attended only one with Child's siblings and one with Child. Ms. Luciano observed that Mother's visit with Child's siblings started off well but deteriorated as A.B. exhibited disruptive behaviors. Mother was unable to calm A.B. and in turn, was unable to give adequate attention to C.B. However, Mother's one visit with Child went very well.

Nicole Mickelson, a crisis specialist at Pressley Ridge, testified that Mother found appropriate housing and the rent was paid until September 2021. Ms. Mickelson did a walkthrough of Mother's apartment and determined that it was appropriately set up for an infant. Ms. Mickelson reported that two ongoing concerns for Mother were transportation and employment. Although they were working on addressing those concerns, Ms. Mickelson testified that

Mother currently did not have a source of income. Ms. Mickelson noted instances where Mother had slurred speech which raised concerns that Mother was overmedicated. Mother had a prescription for anxiety medication which she took as needed. Mother was also on a methadone treatment plan with a different provider. Ms. Mickelson encouraged Mother to consider rehabilitation, detox and working with a psychiatrist to readjust her prescription, but no action was taken.

Destiny Michael, a caseworker at CYF, testified that Mother missed 14 of her last 20 scheduled drug tests. In the tests that she took, Mother tested negative except for the medications she was prescribed. Ms. Michael repeatedly requested Mother to provide a copy of her prescription for anxiety medication and/or information about the provider or physician who prescribed it. To date, Mother had not complied with this request. Regarding Mother's positive test for fentanyl at Child's birth, Ms. Michael testified that Mother's drug test from birth was sent out for lab levels because there was concern that Mother had additional exposure to fentanyl than what was contained in the epidural. From the results, the doctor was unable to determine whether the level present in Mother's system was from the epidural without additional testing. The doctor attempted to schedule an additional test with Mother but Mother did not comply.

Mother testified that she only missed some visits with her children because of miscommunication with her advocate about whether the visits were

confirmed. Mother further stated that some of the visits were scheduled when she was still in the hospital after giving birth to Child. Mother testified that she had criminal charges against her in York County for driving under the influence of methadone with her daughter in the backseat. Mother stated that she was unaware that she could not drive while on methadone. However, Mother admitted that three months later she again drove under the influence of methadone resulting in criminal charges in Cumberland County. At the time of the hearing, Mother had pled guilty to the charges in Cumberland County with the understanding that she would be sentenced to probation but had not yet been formally sentenced. Finally, Mother stated that she only tested positive for fentanyl at Child's birth because of the epidural. Mother did not have a history of fentanyl abuse and it was generally not included in the substances for which Mother was previously drug tested.

On August 4, 2021, the court adjudicated Child dependent and granted physical and legal custody to CYF. Mother timely filed a notice of appeal and contemporaneous statement of errors complained of on appeal on September 3, 2021.

Mother raises the following issue for our review:

> Did the [trial] court abuse its discretion and err as a matter of law as [CYF] failed to meet its burden in finding the child dependent?

(Mother's Brief at 5).

On appeal, Mother argues that she secured housing and appropriately

- 4 -

set it up to care for Child. Mother contends that she is successfully working with a crisis team at Pressley Ridge to address any other issues and deficiencies in her parenting. Mother insists that she only tested positive for fentanyl because of the epidural administered to her prior to Child's birth. Besides the drug test given at birth, Mother's other drug tests have only been positive for her prescription medications, methadone and clonazepam. Mother concludes that the trial court erred in finding clear and convincing evidence that Mother was unable to provide proper parental care to Child necessary to adjudicate Child dependent. We disagree.

The applicable scope and standard of review for dependency cases is as follows:

> [T]he standard of review in dependency cases requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record, but does not require the appellate court to accept the [trial] court's inferences or conclusions of law. Accordingly, we review for an abuse of discretion.

*In re A.B.*, 63 A.3d 345, 349 (Pa.Super. 2013) (quoting *In re R.J.T.*, 608 Pa. 9, 26-27, 9 A.3d 1179, 1190 (2010)).

> We accord great weight to this function of the hearing judge because [the court] is in the position to observe and rule upon the credibility of the witnesses and the parties who appear before [the court]. Relying upon [the court's] unique posture, we will not overrule [its] findings if they are supported by competent evidence.

*In re A.H.*, 763 A.2d 873, 875 (Pa.Super. 2000). *See also In re R.J.T., supra* (explaining that appellate court is not in position to make "close calls"

based on fact-specific determinations; trial judges are ones to observe parties during hearing and usually have presided over several other hearings with same parties and have longitudinal understanding of case and best interests of individual child involved; thus, even if appellate court would have made different conclusion based on cold record, we are not in position to reweigh evidence and credibility determinations of trial court).

The Juvenile Act defines a dependent child, in pertinent part, as follows:

**§ 6302.  Definitions**

\*    \*    \*

**"Dependent child."**  A child who:

(1)   is without proper parental care or control, subsistence, education as required by law, or other care or control necessary for his [or her] physical, mental, or emotional health, or morals.  A determination that there is a lack of proper parental care or control may be based upon evidence of conduct by the parent, guardian or other custodian that places the health, safety or welfare of the child at risk, including evidence of the parent's, guardian's or other custodian's use of alcohol or a controlled substance that places the health, safety or welfare of the child at risk[.]

42 Pa.C.S.A. § 6302.

A court may adjudicate a child as dependent if the child meets the statutory definition of a dependent child by clear and convincing evidence.  ***In re E.B.***, 898 A.2d 1108, 1112 (Pa.Super. 2006).  Additionally, "[a] finding of dependency can be made based on prognostic evidence and such evidence is sufficient to meet the strict burden of proof necessary to declare a child dependent."  ***In re R.W.J.***, 826 A.2d 10, 14 (Pa.Super. 2003).  "The court

- 6 -

J-A01029-22

must make a comprehensive inquiry into whether proper parental care is immediately available or what type of care [the parent] could provide in the future." *Id.*

> If the court finds that the child is dependent, then the court may make an appropriate disposition of the child to protect the child's physical, mental and moral welfare, including allowing the child to remain with the parents subject to supervision, transferring temporary legal custody to a relative or a private or public agency, or transferring custody to the juvenile court of another state.

*In re E.B., supra* at 1112.

Upon a finding of dependency, the court must focus on the child's best interests and order a disposition best suited to the child's safety and well-being. *In re S.B.*, 943 A.2d 973 (Pa.Super. 2008), *appeal denied*, 598 Pa. 782, 959 A.2d 320 (2008); *In re L.C., II*, 900 A.2d 378, 381 (Pa.Super. 2006). The court may not separate the child from the parent unless it finds that the separation is clearly necessary. *In re G.T.*, 845 A.2d 870 (Pa.Super. 2004). Such necessity is implicated where the child's welfare, safety, or health demands he or she be taken from his or her parent's custody. *Id.*; *In re R.W.J., supra*.

Instantly, the trial court made the following findings of fact based on the evidence presented:

> Mother was referred to the Pressley Ridge team and they identified trauma parenting for treatment with Mother. She was informed about trauma and the impact on parenting. She was successfully discharged on June 10th. Though she had a slow start in mid-February, she did finally get in

- 7 -

contact and she was attentive in sessions. She was also working with another agency at the same time, but did not like the advocate. The caseworker at Pressley Ridge did try to begin additional services with Mother but they were unable to open. Mother was facing eviction and had a high level of stress due to the pregnancy and imminent transition. Though she had requested that the team help her, she then became distraught and animated about completing assessments and therefore a crisis team was recommended since she was unwilling to work with the intensive family services. Mother is not working but plans to return to work. The team was unable to effectively observe her utilizing the [parenting education she received] other than being able to answer questions about the materials that the team provided.

… Mother had 8 visits scheduled but only attended 1 with [Child's siblings] and 1 with [Child]. Her visit with the children did start off well. Ms. Fike helped Mother set up the room and after Ms. Fike left, Mother was unable to address [A.B's] disruptive behaviors. Mother refused to put the child in time out and was argumentative regarding her parenting style. Mother was unable to manage [A.B.] and was then unable to provide attention to [C.B.] Mother's response to the supervisor was that she did not need to be questioned and since Mother was unable to control or calm [A.B.], the visit finally ended. Mother did have a visit with [Child] and she held him and did very well. That visit went smoothly. Mother completed parenting education previously and she may need additional parenting education but would be too overwhelmed to have the service at this time.

Mother failed to show for testing on July 27th and July 29th. She tested positive for her methadone that was sent to the lab for determination of levels. Mother was tested on a custom panel that includes methadone and benzodiazepines, in addition to other substances. There continues to be concerns about Mother securing additional medication for anxiety from a different physician than her regular doctor. Mother has not confirmed her current prescription. Mother has paid her rent through August and reports having assistance in paying her rent through September but concerns continue regarding her ability to maintain housing due prior eviction cases. Mother has

sought to have ongoing relations with [the children's father] and [CYF] is concerned about ongoing domestic violence between the parties until treatment is provided to the father.

(Trial Court Order, filed 8/4/21, at 4).

Our review of the record supports the trial court's findings. Here, the court did not find Mother's testimony credible noting that "Mother appeared to be under the influence at the time of the [July 23, 2021 hearing]". (Trial Court Order, at 2). The trial court is best situated to make credibility determinations and we refuse to substitute our judgment for that of the trial court. *See In Re A.H., supra*. While Mother is correct that there is significant uncertainty regarding her exposure to fentanyl, the court did not base its decision on this factor alone. The court's findings regarding Mother's unstable financial and housing situation, ongoing concerns about overmedication, and failures to consistently attend drug testing and visitation with her children demonstrate that Mother is currently unable to provide proper care or control necessary for Child's physical, mental, or emotional health. *See* 42 Pa.C.S.A. § 6302. On this record, and in light of our deferential standard of review, we simply cannot say that the trial court abused its discretion in adjudicating Child dependent. *See In re R.J.T., supra*; *In re A.B., supra*. Accordingly, we affirm.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 1/31/2022