J-A01028-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: H.G., A MINOR | : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: M.W., MOTHER | : : : : : : : | |
| | : | No. 1983 EDA 2024 |

Appeal from the Order Entered July 2, 2024
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s):  CP-51-DP-0000798-2023


BEFORE:  DUBOW, J., KING, J., and SULLIVAN, J.

MEMORANDUM BY KING, J.:                    **FILED JANUARY 28, 2025**

Appellant, M.W. ("Mother"), appeals from the order entered in the Philadelphia County Court of Common Pleas, which adjudicated her minor child, H.G. ("Child") dependent.[1]  We affirm.

The relevant facts and procedural history of this case are as follows.  On July 19, 2023, the Department of Human Services ("DHS") received a general protective services ("GPS") report that Child had been inappropriately touched by his older sibling.  The report also stated that Mother used drugs and suffered from erratic behavior and potential mental health concerns; Mother prostituted herself and allowed drug users and dealers into the family's home; and that drugs were found in Child's backpack and had been placed there by

_____

[1] Counsel for Child's father was present at the adjudication hearing.  Father has not appealed from the order adjudicating Child dependent.

an unknown male. DHS attempted to investigate but Mother refused to cooperate. On October 27, 2023, DHS filed a motion to compel Mother's cooperation with the investigation of the report.

On January 3, 2024, DHS received another GPS report regarding mother's combative behavior when dropping Child off at school. The report stated Mother had left Child at the school after being told he had been unenrolled due to Mother's behavior, could not return to or remain at the school, and had been exhibiting behavioral issues. When Mother again refused to cooperate, DHS filed a motion to compel Mother's cooperation.

On January 30, 2024, DHS filed another motion seeking to compel Mother's cooperation with the investigation. On April 3, 2024, the court conducted an evidentiary hearing and granted DHS' motion. The court ordered Mother to sign releases for medical records and allow DHS to interview Child. Mother subsequently refused to comply. On May 8, 2024, DHS obtained an order of protective custody and placed Child with Maternal Grandmother.

On May 16, 2024, DHS filed a dependency petition. On July 2, 2024, the trial court held an evidentiary hearing on the petition. DHS presented the testimony of Joseph Mock, the principal of St. Ignatius school; Jade Hickenbottom, DHS social worker; and Anna May, Community Umbrella Agency ("CUA") case manager. Mother presented Child's testimony, but did not testify on her own behalf and, instead, left the courtroom. Following the hearing, the court adjudicated Child dependent and ordered Mother to attend

mental health consults and evaluations, and to engage in anger management.

On July 30, 2024, Mother timely filed a notice of appeal and concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i).

On appeal, Mother raises the following issues for our review:

> Whether the trial court's determination as to Mother's conduct under 42 Pa.C.S.A. §§ 6301-6385 was not supported by clear and convincing evidence.
>
> Whether the trial court's determination that [Child] is a dependent child under 42 Pa.C.S.A. §§ 6301-6385 was not supported by clear and convincing evidence.

(Mother's Brief at 3).[2]

Mother argues that she was not given the opportunity to cooperate with a DHS plan, and that it was not necessary to adjudicate Child dependent. Mother asserts that DHS failed to present specific, recommended steps that she failed to complete. Mother claims that DHS witnesses testified that she had arranged services for Child at his school. According to Mother, with the continued supervision and services of DHS, she would have been able to ensure the safety of Child. Mother avers that there was no medical evidence or evidence from Child's school, or any other evidence that Child was abused or harmed. On this record, Mother concludes the court erred in finding clear and convincing evidence to warrant adjudicating Child dependent and placing Child in DHS custody. We disagree.

_____

[2] Although presented as two issues, Mother combines her argument in one section. Thus, we address both issues together.

The applicable scope and standard of review for dependency cases is as follows:

> [T]he standard of review in dependency cases requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record, but does not require the appellate court to accept the [trial] court's inferences or conclusions of law. Accordingly, we review for an abuse of discretion.

*In re A.B.*, 63 A.3d 345, 349 (Pa.Super. 2013) (quoting *In re R.J.T.*, 608 Pa. 9, 26-27, 9 A.3d 1179, 1190 (2010)).

> We accord great weight to this function of the hearing judge because [the court] is in the position to observe and rule upon the credibility of the witnesses and the parties who appear before [the court]. Relying upon [the court's] unique posture, we will not overrule [its] findings if they are supported by competent evidence.

*In re A.H.*, 763 A.2d 873, 875 (Pa.Super. 2000).

The Juvenile Act defines a dependent child, in pertinent part, as follows:

### § 6302. Definitions

\* \* \*

**"Dependent child."** A child who:

(1) is without proper parental care or control, subsistence, education as required by law, or other care or control necessary for his [or her] physical, mental, or emotional health, or morals. A determination that there is a lack of proper parental care or control may be based upon evidence of conduct by the parent, guardian or other custodian that places the health, safety or welfare of the child at risk, including evidence of the parent's, guardian's or other custodian's use of alcohol or a controlled substance that places the health, safety or welfare of the child at risk[.]

- 4 -

42 Pa.C.S.A. § 6302.

A court may adjudicate a child as dependent if the child meets the statutory definition of a dependent child by clear and convincing evidence. *In re E.B.*, 898 A.2d 1108, 1112 (Pa.Super. 2006). Additionally, "[a] finding of dependency can be made based on prognostic evidence and such evidence is sufficient to meet the strict burden of proof necessary to declare a child dependent." *In re R.W.J.*, 826 A.2d 10, 14 (Pa.Super. 2003). "The court must make a comprehensive inquiry into whether proper parental care is immediately available or what type of care [the parent] could provide in the future." *Id.*

> If the court finds that the child is dependent, then the court may make an appropriate disposition of the child to protect the child's physical, mental and moral welfare, including allowing the child to remain with the parents subject to supervision, transferring temporary legal custody to a relative or a private or public agency, or transferring custody to the juvenile court of another state.

*In re E.B., supra* at 1112.

Upon a finding of dependency, the court must focus on the child's best interests and order a disposition best suited to the child's safety and well-being. *In re S.B.*, 943 A.2d 973 (Pa.Super. 2008), *appeal denied*, 598 Pa. 782, 959 A.2d 320 (2008); *In re L.C., II*, 900 A.2d 378, 381 (Pa.Super. 2006). The court may not separate the child from the parent unless it finds that the separation is clearly necessary. *In re G.T.*, 845 A.2d 870 (Pa.Super. 2004). Such necessity is implicated where the child's welfare, safety, or health demands he or she be taken from his or her parent's custody. *Id.*; *In*

*re R.W.J., supra*.

Instantly, the court concluded that Mother was presently unable to properly care for Child or to keep Child safe. Specifically, the court explained:

> [Mother has been] noncompliant for every hearing that we've had in this courtroom. I fail to see how any additional time would change that. Mother walked out of this courtroom today. Mother has very clear mental health issues.
>
> Every witness that testified has experienced the same— including, I suspect, yourself, Counsel—has had the same experience with mother in this case. I don't find any additional time would change that. I find that the Department has met its burden through clear and convincing evidence and credible witness testimony to adjudicate today based on present inability.
>
> I am sympathetic. Mother has clear mental health and comprehension issues, as displayed through every hearing she's attended in this courtroom. She was found in contempt of court on May 8, 2024, due to her lack of cooperation.
>
> The testimony of Principal Mock today is that [M]other abandoned [Child] at school after being informed that he was unenrolled. [Child] confirmed that he knew that he was unenrolled. Mother brought him there, left him there, and I found the principal's testimony to be convincing, as well as the other DHS witnesses.
>
> Mother in this case is the biggest inhibitor in her ability to reunify with [Child]. She has shown a complete lack of cooperation, and in doing, she has demonstrated no ability to safely care for [Child] because she has refused to cooperate throughout this process.

> This child was referred to be 302'd[3] and to seek mental health. Mother did not appear. I have no idea if his mental health needs are being met. He's clearly displaying symptoms in this courtroom, and has indicated that he is depressed.
>
> Mother does not have the ability, and does not display the ability to care for the child. The Department has met its burden by clear and convincing evidence.

(N.T. Dependency Hearing, 8/28/24, at 66-68).

The record supports the court's findings. We agree with the court that Mother's actions placed the health, safety or welfare of Child at risk. *See* 42 Pa.C.S.A. § 6302; *In re E.B., supra*. The record shows that Child needed mental health treatment and had been involuntarily committed after repeated disruptive behavior, fighting other students, and threatening to "shoot the school up." (N.T. Dependency Hearing at 42). However, Child could not be admitted for treatment because no parent would sign consent forms, Mother and Father both refused to come to the hospital crisis center, and as a result, Child was discharged. (*See id.* at 32).

Despite Mother's argument that she could have achieved safety for Child given more time, the record does not support this assertion. Throughout the pendency of this matter, Mother has refused to cooperate with DHS, even when so ordered by the court. There is no indication that, with more time, such issues would resolve. Therefore, Mother's refusal to cooperate with the DHS investigation and sign necessary consent forms so that Child could

---

[3] This refers to involuntary, emergency commitment, examination, and treatment pursuant to 50 P.S. § 7302.

receive much-needed mental health treatment, as well as her documented anger issues and other mental health concerns, supports the court's conclusion that separation from Mother was necessary to keep Child safe. ***See In re G.T., supra***. We discern no abuse of discretion in the court's adjudication of Child as dependent and placement of Child in DHS custody and kinship care. ***See In re A.B., supra***; ***In re A.H., supra***. Accordingly, we affirm.

Order affirmed.

Judge Dubow did not participate in the consideration or decision of this case.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 1/28/2025