J-A17026-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: D.W., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: D.W., FATHER | : | No. 532 EDA 2021 |

Appeal from the Order Entered February 19, 2021
In the Court of Common Pleas of Philadelphia County
Juvenile Division at No(s): CP-51-DP-0000951-2015

| | | |
|---|---|---|
| IN THE INTEREST OF: A.W., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: D.W., FATHER | : | No. 533 EDA 2021 |

Appeal from the Order Entered February 19, 2021
In the Court of Common Pleas of Philadelphia County
Juvenile Division at No(s): CP-51-DP-0000952-2015

| | | |
|---|---|---|
| IN THE INTEREST OF: A.W., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: D.W., FATHER | : | No. 534 EDA 2021 |

Appeal from the Order Entered February 19, 2021
In the Court of Common Pleas of Philadelphia County
Juvenile Division at No(s): CP-51-DP-0000953-2015

J-A17026-21

BEFORE:   McLAUGHLIN, J., KING, J., and PELLEGRINI, J.[*]

MEMORANDUM BY KING, J.:                    **FILED AUGUST 6, 2021**

Appellant, D.W. ("Father"), appeals from the orders entered in the Philadelphia County Court of Common Pleas, which adjudicated his minor children, D.W., Aj.W., and Al.W. ("Children"),[1] dependent.  We affirm.

The trial court set forth the relevant facts and procedural history of this case as follows:

> On June 1, 2020, the Department of Human Services ("DHS") received a [General Protective Services ("GPS")] report containing allegations of lack of supervision and inadequate basic needs.  The GPS [report] alleged that Father had been dropping …[C]hildren off at maternal great grandmother's house without ensuring that a caretaker was present.  Additionally, the report alleged that [C]hildren appeared "dirty, unkempt and [malodorous]."  The GPS report dated 6/1/20 was determined to be valid. Subsequently, DHS investigated.  Additionally, on September 25, 2020, a subsequent GPS report was received.  As a result, this [c]ourt held an adjudicatory hearing on December 18, 2020.
>
> At the adjudicatory hearing, DHS investigative worker Emma Olshin testified that she completed an investigation of the family after receiving the 6/[1]/20 GPS report.  Ms. Olshin stated that throughout the course of her investigation, Father was very uncooperative.  Ms. Olshin further testified that she determined there were additional dependency issues regarding Father's care of …[C]hildren outside the scope of the GPS report.  …[C]hildren had

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] In its opinion, the trial court explains: "As two of …[C]hildren have the same initials, the [c]ourt will use the first two letters of those [C]hildren's first names for clarity."  (Trial Court Opinion, filed April 19, 2021, at n. 2).  We will do the same.

- 2 -

numerous unexcused absences from school while in Father's care. Significantly, …[C]hildren reported to Ms. Olshin that they were fearful of Father. They reported that Father had struck them with a closed fist and a belt. When Ms. Olshin interviewed …[C]hildren, she witnessed numerous marks, scabs and bruising on …[C]hildren, which they reported were caused by Father. Additionally, …Children reported they are left unsupervised while in Father's care.

Joseph Connolly, a DHS investigative worker, also testified at the adjudicatory hearing. He testified that DHS received an additional GPS report on September 25, 2020, containing allegations of inappropriate discipline, [C]hildren sexually acting out and parental substance abuse as to Mother and her paramour. The allegations of inappropriate discipline and parental substance abuse were determined to be valid. Mr. Connolly further testified that Aj.W. disclosed that Mother had disciplined her by hitting her on the side of the head and mouth with a belt.

The CUA social worker, Tanea Cotte, also testified at the adjudicatory hearing. Ms. Cotte testified that Aj.W. disclosed that Father had hit her and her siblings while discipling them. Ms. Cotte further testified that …Children have resided with their paternal aunt since June 15, 2020. Regarding Mother, Ms. Cotte stated that Aj.W. reported that Mother has fallen asleep while …[C]hildren were in her care. She further stated that Aj.W., who was ten years old, disclosed that she has been left to care for …[C]hildren while Mother has fallen asleep.

Father's counsel called Father as a witness. Due to the nature of the allegation against Father, this [c]ourt appointed Father Fifth Amendment counsel to advise Father of his rights under the Fifth Amendment. As a result, this [c]ourt bifurcated the adjudicatory hearing so Father's Fifth Amendment counsel could consult with Father and be present for the next hearing.

This [c]ourt held the conclusion of the bifurcated hearing on February 19, 2021. At the bifurcated hearing, Father did not appear, and his counsel declined to call him as a witness. Mother was called to testify at the hearing. Mother testified that she has sufficient housing for all of …[C]hildren. Mother

also stated that she has been diagnosed with Sickle Cell Disease. She further testified that she takes medication for her condition, which has side effects including fatigue. Mother denied the allegations of inappropriate discipline against Aj.W. Mother acknowledged that her medication can make her fatigued but stated that she has a support network to assist her if she was unable to care for …[C]hildren.

At the conclusion of the adjudicatory hearing, this [c]ourt adjudicated …Children dependent based on both present inability and truancy and granted full legal custody of …Children to DHS. This [c]ourt further ordered …[C]hildren to be referred to the Education Support Center and for tutoring. This [c]ourt also ordered Father to be referred to Behavioral Health Services ("BHS"), an anger management program, and to the Achieving Reunification Center ("ARC") for parenting. Father was granted supervised visits with …Children at the agency at …Children's discretion.

(Trial Court Opinion at 2-4) (internal citations omitted). On March 17, 2021, Father timely filed three notices of appeal, as well as concise statements of errors complained of on appeal pursuant to Pa.R.A.P. 1925.[2] On April 7, 2021, this Court consolidated the appeals *sua sponte*.

Father raises the following issues for our review:

Whether the [t]rial [c]ourt erred in finding the evidence to have been sufficient to sustain an [a]djudication of [d]ependency (as to the purported allegations as well as to truancy).

Whether the [t]rial [c]ourt erred in finding the evidence to have been sufficient to remove Children (Above Captioned) from [Father's h]ome.

Whether the [t]rial [c]ourt erred in admitting into evidence

_____

[2] Mother has not appealed from the trial court's orders adjudicating Children dependent and is not a party to this appeal.

Children's "out of court statement" (that being Children's responses introduced by way of testimony from DHS Investigator Emma Olshin.).

(Father's Brief at 5).

In his first two issues combined, Father argues there was insufficient evidence to support the trial court's decision to adjudicate Children dependent and remove them from Father's home. Father asserts that Children's marks, scabs, and bruises are not signs of serious physical injury that would indicate child abuse. Additionally, Father avers the record does not indicate that Children's absences from school were unexcused. While Father concedes that Children's excessive absences "may be construed as somewhat suspicious," he insists that an excessive number of excused absences is not clear and convincing evidence of truancy. (*Id.* at 12). Father concludes the evidence presented does not support a dependency adjudication and, without an adjudication of dependency, the legal basis for removing Children from Father's home is also eliminated. We disagree.

The applicable scope and standard of review for dependency cases is as follows:

> [T]he standard of review in dependency cases requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record, but does not require the appellate court to accept the lower court's inferences or conclusions of law. Accordingly, we review for an abuse of discretion.

*In re A.B.*, 63 A.3d 345, 349 (Pa.Super. 2013) (quoting *In re R.J.T.*, 608 Pa. 9, 26-27, 9 A.3d 1179, 1190 (2010)).

- 5 -

We accord great weight to this function of the hearing judge because [the court] is in the position to observe and rule upon the credibility of the witnesses and the parties who appear before [the court]. Relying upon [the court's] unique posture, we will not overrule [its] findings if they are supported by competent evidence.

*In re A.H.*, 763 A.2d 873, 875 (Pa.Super. 2000). *See also In re L.Z.*, 631 Pa. 343, 360, 111 A.3d 1164, 1174 (2015) (reiterating standard of review in dependency cases requires appellate court to accept trial court's findings of fact and credibility determinations if record supports them, but appellate court is not required to accept trial court's inferences or conclusions of law); *In re D.P.*, 972 A.2d 1221, 1225 (Pa.Super. 2009), *appeal denied*, 601 Pa. 702, 973 A.2d 1007 (2009) (stating applicable standard of review in dependency cases is "abuse of discretion").

The Juvenile Act defines a dependent child, in pertinent part, as follows:

**§ 6302.  Definitions**

\* \* \*

**"Dependent child."**  A child who:

(1)   is without proper parental care or control, subsistence, education as required by law, or other care or control necessary for his [or her] physical, mental, or emotional health, or morals.  A determination that there is a lack of proper parental care or control may be based upon evidence of conduct by the parent, guardian or other custodian that places the health, safety or welfare of the child at risk, including evidence of the parent's, guardian's or other custodian's use of alcohol or a controlled substance that places the health, safety or welfare of the child at risk[.]

\* \* \*

> (5) while subject to compulsory school attendance is habitually and without justification truant from school[.]
>
> \* \* \*

42 Pa.C.S.A. § 6302(1), (5). Under Pennsylvania law, a child is of compulsory school age from ages six to eighteen. 24 P.S. § 13-1326. A child is truant when he or she incurs three or more unexcused absences during a school year. *Id.*

> The [petitioner] bears the burden of proving by clear and convincing evidence that a child's absence from school is "without justification." To meet this burden, the [petitioner] may offer testimony and school attendance records to establish that no excuse was received by the school for an absence, or that a proffered excuse is facially invalid or insufficient.

*In re C.M.T.*, 861 A.2d 348, 354 (Pa.Super. 2004).

A court may adjudicate a child as dependent if the child meets the statutory definition of a dependent child by clear and convincing evidence. *In re E.B.*, 898 A.2d 1108, 1112 (Pa.Super. 2006). Additionally, "[a] finding of dependency can be made based on prognostic evidence and such evidence is sufficient to meet the strict burden of proof necessary to declare a child dependent." *In re R.W.J.*, 826 A.2d 10, 14 (Pa.Super. 2003). "The court must make a comprehensive inquiry into whether proper parental care is immediately available or what type of care [the parent] could provide in the future." *Id.*

> If the court finds that the child is dependent, then the court may make an appropriate disposition of the child to protect the child's physical, mental and moral welfare, including

allowing the child to remain with the parents subject to supervision, transferring temporary legal custody to a relative or a private or public agency, or transferring custody to the juvenile court of another state.

*In re E.B., supra* at 1112.

Upon a finding of dependency, the court must focus on the child's best interests and order a disposition best suited to the child's safety and well-being. *In re S.B.*, 943 A.2d 973 (Pa.Super. 2008), *appeal denied*, 598 Pa. 782, 959 A.2d 320 (2008); *In re L.C., II*, 900 A.2d 378, 381 (Pa.Super. 2006). The court may not separate the child from the parent unless it finds that the separation is clearly necessary. *In re G.T.*, 845 A.2d 870 (Pa.Super. 2004). Such necessity is implicated where the child's welfare, safety, or health demands he or she be taken from his or her parent's custody. *Id.*; *In re R.W.J., supra*.

Instantly, in addressing Father's first two issues, the trial court reasoned:

> Here, DHS met its burden by demonstrating that …Children are dependent based upon present inability. The June 1, 2020 GPS report alleging lack of supervision and inadequate basic needs was determined to be valid as to Father. Ms. Olshin credibly testified that Father dropped …[C]hildren off at their maternal great-grandmother's home without ensuring that she was present at the home to care for them. Additionally, …[C]hildren appeared dirty, unkempt and malodorous at the time they were in Father's care. Ms. Olshin also testified that …Children disclosed that Father hit them with both his fists and a belt, which was supported by the bruising and scarring Ms. Olshin witnesse[d] on …Children during her investigation. Moreover, the September 25, 2020 GPS report alleging substance abuse and inappropriate discipline was determined to be valid as

to Mother. Mr. Connolly testified that Aj.W. disclosed that Mother struck her on the head and mouth with a belt to discipline her. Additionally, Aj.W. has disclosed that she has been left to care for …[C]hildren while Mother has fallen asleep. Accordingly, [the trial court] found sufficient evidence to adjudicate …Children dependent pursuant to 42 Pa.C.S.A. § 6302(1).

\* \* \*

[Additionally, i]n adjudicating …Children dependent, this [c]ourt determined that …Children were truant from school. Ms. Olshin testified regarding …Children's absences from school while in Father's care. Ms. Olshin stated that Al.W. was absent 25 days in the 2019-2020 school year, Aj.W. was absent 21 days and D.W. was absent 11 days. Notably, Ms. Olshin stated that she was testifying based upon …Children's school records. Because …Children had missed more than three days of school and were of compulsory school age, …[C]hildren met the statutory definition of truant children. Additionally, DHS provided evidence that …Children were truant without justification as Ms. Olshin testified from …Children's school records as provided by their schools. Accordingly, [the trial court] adjudicated …Children dependent pursuant to 42 Pa.C.S.A. § 6302(5).

\* \* \*

Here, this [c]ourt properly adjudicated …Children [dependent] based upon present inability and truancy. Subsequently, this [c]ourt determined that it would be in …Children's best interest to remain with their kinship care provider instead of returning to Father's care. The testimony offered at the bifurcated adjudicatory hearing clearly supports this [c]ourt's dispositional order. The valid GPS report dated 6/1/20 demonstrated that Father failed to both properly supervise …Children and ensure their basic hygienic needs were met daily. Significantly, Ms. Olshin credibly testified regarding Father's use of inappropriate discipline against …Children, which was further supported based upon the bruises and scarring she witnessed on …Children and Aj.W.'s disclosure. Additionally, testimony was offered that …Children had a significant number of unexcused absences while in Father's care. Based upon the

testimony offered, this [c]ourt determined that Father was unable and unwilling to meet …Children's basic health, safety and educational needs; therefore, it was in their best interest to be removed from Father's care.

Additionally, this [c]ourt determined that DHS and CUA had made reasonable efforts to prevent …Children from being removed from Father's care. Ms. Olshin testified that Father was uncooperative during her investigation after receiving the 6/1/20 GPS report. A safety plan was implemented for …Children after Ms. Olshin reported several safety concerns with allowing Children to return to Father's care. Additionally, Ms. Olshin testified that …Children disclosed that they are fearful of returning to Father's care. Based upon the testimony regarding the current safety concerns and the necessity of the implementation of a safety plan for …Children, this [c]ourt determined that it is in …Children's best interest to be removed from Father's care.

(Trial Court Opinion at 6-9) (internal footnote and citations omitted). We agree with the trial court's analysis. Here, DHS presented sufficient evidence of Children's excessive absences from school, Children's lack of adult supervision while in Father's care, and Father's inability to provide for the basic hygienic needs of Children. Thus, we find no abuse of discretion in the trial court's decision to adjudicate Children dependent and remove Children from Father's care. *See In re A.B., supra*.

In his third issue, Father argues that portions of Ms. Olshin's testimony constituted hearsay, where her testimony included statements from Children, but Children had not been called to testify at the hearing. Father concedes that, pursuant to the statutory exception at 42 Pa.C.S.A. § 5986, "otherwise inadmissible" out-of-court statements made by a child are nevertheless admissible in dependency proceedings. (Father's Brief at 13). Father avers,

however, that this hearsay exception applies only to "particular matters (such as sex acts), and is subject to qualification (the need for a prior *in camera* hearing)." (*Id.*) Father concludes that Children's statements should not have been admitted into evidence and, as a result, this Court should vacate the adjudication of dependency and return Children to Father's care. We disagree.

Preliminarily, we observe that appellate briefs must conform in all material respects to the briefing requirements set forth in the Pennsylvania Rules of Appellate Procedure. Pa.R.A.P. 2101. **See also** Pa.R.A.P. 2114-2119 (addressing specific requirements of each subsection of brief on appeal). Regarding the argument section of an appellate brief, Rule 2119(a) provides:

> **Rule 2119. Argument**
>
> **(a) General rule.**—The argument shall be divided into as many parts as there are questions to be argued; and shall have at the head of each part—in distinctive type or in type distinctively displayed—the particular point treated therein, followed by such discussion and citation of authorities as are deemed pertinent.

Pa.R.A.P. 2119(a). "[I]t is an appellant's duty to present arguments that are sufficiently developed for our review. The brief must support the claims with pertinent discussion, with references to the record and with citations to legal authorities." **Commonwealth v. Hardy**, 918 A.2d 766, 771 (Pa.Super. 2007), *appeal denied*, 596 Pa. 703, 940 A.2d 362 (2008) (internal citations omitted). "This Court will not act as counsel and will not develop arguments on behalf of an appellant." **Id.** If a deficient brief hinders this Court's ability to address any issue on review, we shall consider the issue waived.

- 11 -

*Commonwealth v. Gould*, 912 A.2d 869, 873 (Pa.Super. 2006) (holding appellant waived issue on appeal where he failed to support claim with relevant citations to the record). *See also Lackner v. Glosser*, 892 A.2d 21, 29 (Pa.Super. 2006) (stating: "Appellate arguments which fail to adhere to [the rules of appellate procedure] may be considered waived, and arguments which are not appropriately developed are waived"); *Jones v. Jones*, 878 A.2d 86, 90 (Pa.Super. 2005) (emphasizing that "a failure to argue and to cite any authority supporting any argument constitutes a waiver of issues on appeal").

Instantly, Father objects to the admission of Ms. Olshin's testimony concerning certain statements Children made to Ms. Olshin. In his appellate brief, however, Father fails to specify which statements he takes issue with and fails to provide citation to any such statements in the record. *See Hardy, supra*; *Gould, supra*. Furthermore, aside from some general statements of law, Father's entire argument on the issue consists of a mere three sentences, and Father fails to apply any of the law he cites to the facts of his case. *See Jones, supra*. Thus, Father's failure to adequately develop his argument on appeal hampers our ability to review this issue and renders the issue waived on appeal. *See Gould, supra*. Accordingly, we affirm.

Orders affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/6/2021