J-S29031-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

IN THE INTEREST OF: E.F., A MINOR  :   IN THE SUPERIOR COURT OF
                                                     :         PENNSYLVANIA
                                                       :

APPEAL OF: A.A., MOTHER  :
                                                       :
 :
 :
 :
 :
 :
 :   No. 725 MDA 2023

Appeal from the Order Entered April 21, 2023
In the Court of Common Pleas of York County Juvenile Division at No(s):
CP-67-DP-0000120-2023

BEFORE:   MURRAY, J., KING, J., and COLINS, J.[*]

MEMORANDUM BY COLINS, J.:                    **FILED OCTOBER 20, 2023**

A.A. ("Mother") appeals from the order adjudicating her minor child, E.F., born 2010 ("Child"), dependent.  Additionally, Mother's counsel has filed a petition for leave to withdraw and an accompanying brief pursuant to ***Anders v. California***, 386 U.S. 738 (1967).  After careful review, we affirm and grant the petition to withdraw.

On March 6, 2023, the Newberry Township Police Department responded to a report that a girl—later determined to be Child, who has been diagnosed with Down syndrome and is believed to be non-verbal—was seen walking unaccompanied along a road approximately ¼ mile from the home where Child resides with Mother.  N.T., 4/21/23, at 8-9.  The Newberry

_____

[*] Retired Senior Judge assigned to the Superior Court.

Township Police Department had responded to a similar report involving Child wandering alone in November 2022. *Id.* at 11-12, 30.

On April 6, 2023, the York County Office of Children, Youth, and Families ("Agency") filed the instant dependency petition. On that same date, the trial court issued an order and summons scheduling a hearing on the dependency petition for April 21, 2023, and directing that Mother, Child, and Child's father, G.F.-D. ("Father"), attend the hearing. Order and Summons, 4/6/23, at 1-2. The order also appointed a guardian *ad litem* ("GAL") to represent Child, directed the parents to permit the GAL's access to Child for an interview in preparation for the hearing, and advised the parents that they had the right to counsel in the dependency proceedings, as well as the right to appointed counsel if they lacked sufficient financial resources. *Id.*; *see also* 42 Pa.C.S. § 6311(a), (b)(1) (providing that trial court shall appoint a GAL to represent child's legal and best interests in dependency proceeding and that the GAL shall "[m]eet with the child as soon as possible following appointment . . . and on a regular basis thereafter in a manner appropriate to the child's age and maturity"); 42 Pa.C.S. § 6337 ("[A] party is entitled to representation by legal counsel at all stages of any proceedings under [the Juvenile Act] and if he is without financial resources or otherwise unable to employ counsel, to have the court provide counsel for him."). An affidavit of service was filed indicating that the scheduling order and summons were posted at Mother's address on April 13, 2023. Affidavit of Service, 4/19/23.

The hearing occurred as scheduled on April 21, 2023; neither Mother nor Father attended, nor were they represented by counsel at the hearing.[1] Child likewise was not present. Child's GAL stated that she had made several attempts to contact Mother so she could meet with Child and that Mother either did not respond to voicemails or picked up the phone and hung up without speaking; Mother also did not answer the door when the GAL went to her residence. N.T., 4/21/23, at 4-5. Counsel for the Agency reported at the hearing the caseworker's inability to make contact with Mother despite recent attempts since the filing of the dependency petition as well as the Agency's failure to locate Father to date as he was believed to be in Puerto Rico. *Id.* at 4-6.

Officer Jonathan Taylor of the Newberry Township Police Department, David Surovec of Insight PA Cyber Charter School, and Nicole Cuevas-Rios, the assigned Agency caseworker, testified at the hearing. Officer Taylor testified that he responded to the residence of the individual who found Child on March 6, 2023, but Mother had already arrived to pick Child up. *Id.* at 8-9. The individual who made the police report described Mother as combative and argumentative when Mother retrieved Child. *Id.* at 9. Officer Taylor

---

[1] A bench warrant was issued during the April 21, 2023 hearing based upon Mother's failure to appear, and Mother was arrested, brought before the trial court, and released on that date. N.T., 4/21/23, at 38-40, 48-60; Bench Warrant, 4/21/23; Order Vacating Bench Warrant, 4/21/23. Mother filed a petition for court-appointed counsel on April 26, 2023, and Mother's current counsel was appointed to represent her on May 1, 2023.

proceeded to Mother's residence and found that Mother was "very argumentative," refused to step out of her home, and only allowed the officer to see Child through the open doorway. *Id.* at 10, 13. Officer Taylor did not respond to the November 2022 incident of Child wandering, but he was aware of it through the police database. *Id.* at 11-12. No charges were filed as a result of either of the incidents. *Id.* at 12.

Surovec, who is the student resource coordinator at Child's cyber charter school, testified that Mother enrolled Child in that school for the 2022-2023 school year and that Child had 3 excused absences and 95 unexcused absences for the school year out of an approximate 100 school days as of the date of his testimony. *Id.* at 17-20. Surovec stated that Child had not been seen on camera or logged into the school's system during the school year. *Id.* at 19. The school made truancy referrals for Child on October 12 and November 10, 2022, through the ChildLine system. *Id.* at 21-22. Surovec also relayed that Mother had failed to attend an individualized education program, or IEP, meeting on December 19, 2022, despite three invitations being sent. *Id.* at 23. The school also requested a wellness check on December 20, 2022, and later received a report that an officer made contact with Mother and Child on that date. *Id.* at 23-24. Surovec explained that the December 20, 2022 wellness check was the only time that the school had contact with Mother. *Id.* at 28. Surovec testified that Mother missed a student attendance meeting on January 20, 2023, and the school referred

Mother to the York County truancy diversion program on that same date. *Id.* at 24.

Cuevas-Rios, the Agency caseworker, testified that an Agency employee contacted Mother in November 2022 after the prior incident in which Child was found to have walked into a stranger's home, but Mother did not allow direct interaction with Child and instead only allowed the employee to see Child through a window. *Id.* at 30. Cuevas-Rios attempted follow-up contact with Mother after that incident but received no answer to her telephone calls or when she knocked on the door. *Id.* at 30-31. Cuevas-Rios spoke to neighbors who said that Mother was always home and Child was almost never seen outside. *Id.* at 31. Cuevas-Rios also spoke with Mother's mother ("Grandmother") who stated that she was worried about Mother's psychological health and isolation from the family; Grandmother further reported to Cuevas-Rios that Mother made a false report to police that Grandmother was attempting to poison Child by feeding her a homemade soup, with any poisoning being ruled out after a hospital visit. *Id.* at 31-33. Grandmother was the only family member Cuevas-Rios spoke to who volunteered to be a kinship resource, but Grandmother resided in Florida and had health issues. *Id.* at 32-33. Mother's cousin also refused to be a kinship resource based upon Mother's perceived mental health issues. *Id.* at 32-35. Cuevas-Rios stated that a foster parent was available should Child be immediately removed from Mother's home. *Id.* at 40-41.

The GAL stated at the hearing that she had "pretty significant concerns" for Child's safety based upon the instances of Child being found walking alone in the community and the fact that no one at the Agency had seen Child since November 2022, the cyber charter school likewise had no knowledge of Child's safety, and Officer Taylor only had fleeting visual contact with Child in March 2023. *Id.* at 41. The GAL noted Child's Down syndrome, her lack of education during the current school year, and Mother's mental health issues. *Id.* at 41-42. The GAL accordingly recommended that Child be removed from Mother's home and be placed in foster care. *Id.* at 42.

At the conclusion of the hearing, the trial court adjudicated Child dependent; the court concluded that the Agency had presented clear and convincing evidence to satisfy paragraphs 1 and 5 of the definition of a "dependent child" in the Juvenile Act because Child was without proper parental care or control and habitually truant from school. *Id.* at 42-43; Order of Adjudication and Disposition, 4/21/23, at 2; *see also* 42 Pa.C.S. § 6302. The court further determined that it was in the best interests of Child that she be removed from Mother's home and that the Agency had undertaken reasonable efforts to prevent Child's removal from the home. N.T., 4/21/23, at 43-44; Order of Adjudication and Disposition, 4/21/23, at 2. The trial court accordingly transferred legal and physical custody of Child to the Agency for her placement in foster care based upon the absence of any suitable kinship resources. N.T., 4/21/23, at 43; Order of Adjudication and Disposition, 4/21/23, at 2. Additionally, while the court found that the Agency had

undertaken adequate efforts to locate additional family members to date, ***see*** Pa.R.J.C.P. 1149, the court directed the trial court to continue attempts to locate family, including Father.  N.T., 4/21/23, at 43, 46-47; Order of Adjudication and Disposition, 4/21/23, at 2-3.

Mother filed a timely notice of appeal, as well as a contemporaneous concise statement of errors complained of on appeal, as required by Pa.R.A.P. 1925(a)(2)(i).  The trial court filed an opinion on June 6, 2023.

Before reaching the merits of this appeal, we must first address whether counsel's petition to withdraw and accompanying brief comply with the procedure outlined in ***Anders*** and related case law.  ***See In re J.D.H.***, 171 A.3d 903, 906 (Pa. Super. 2017) (holding that ***Anders*** procedure for withdrawal of court-appointed counsel applies in a dependency matter, even in the absence of an involuntary termination decree).  In order to withdraw under ***Anders***, counsel must

> 1) petition the court for leave to withdraw stating that, after making a conscientious examination of the record, counsel has determined that the appeal would be frivolous; 2) furnish a copy of the ***Anders*** brief to the appellant; and 3) advise the appellant that he or she has the right to retain private counsel or raise additional arguments that the appellant deems worthy of the court's attention.

***Id.*** at 907 (quoting ***Commonwealth v. Cartrette***, 83 A.3d 1030, 1032 (Pa. Super. 2013) (*en banc*)) (brackets omitted).

With respect to the third requirement, counsel must "attach to their petition to withdraw a copy of the letter sent to their client advising him or

- 7 -

her of their rights." *Id.* (quoting *Commonwealth v. Millisock*, 873 A.2d 748, 752 (Pa. Super. 2005)). Because a parent has a continuing right to counsel in dependency proceedings, an attorney seeking to withdraw during a dependency proceeding must

> inform the parent of his or her right to counsel in any subsequent dependency or involuntary termination proceedings. Counsel must also inform the parent that, if he or she cannot afford counsel, he or she may contact the trial court in order to obtain new counsel. This information must be conveyed to the parent at the same time that counsel informs the parent of his or her other rights pursuant to *Anders*[.]

*Id.* at 906-07; *see also* 42 Pa.C.S. § 6337; 23 Pa.C.S. § 2313(a.1).

> Furthermore, the *Anders* brief must:
>
> (1) provide a summary of the procedural history and facts, with citations to the record;
>
> (2) refer to anything in the record that counsel believes arguably supports the appeal;
>
> (3) set forth counsel's conclusion that the appeal is frivolous; and
>
> (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

*J.D.H.*, 171 A.3d at 907 (quoting *Commonwealth v. Santiago*, 978 A.2d 349, 361 (Pa. 2009)).

In her petition to withdraw, counsel indicated that she has thoroughly reviewed the record and determined that there are no non-frivolous grounds for this appeal. Counsel's *Anders* brief includes a summary of the relevant procedural and factual history of this case and discusses the reasons upon

which counsel bases her conclusion that the appeal is frivolous, with citations to the record and applicable case law. Additionally, Counsel sent a letter to Mother advising her of her right to retain new counsel or proceed *pro se* and raise any additional points she deemed worthy of this Court's attention.[2] This letter was attached to counsel's petition to withdraw, and it indicates that counsel provided Mother with a copy of the petition to withdraw and ***Anders*** brief. Counsel's letter did not advise Mother of her right to appointed counsel in any subsequent dependency or termination proceeding and that she should contact the court to obtain new counsel if she could not afford it. ***See id.*** at 906-07. Therefore, on September 6, 2023, this Court issued a *per curiam* order directing counsel to send Mother a new letter advising her of her continuing right to counsel in future dependency and termination proceedings and to file the letter in this Court within 14 days. Mother has complied with our order.

We thus conclude that counsel has complied with the procedural requirements for withdrawal, and we proceed to review the merits of this appeal. We first consider the issues raised by counsel in her ***Anders*** brief and determine whether they are in fact frivolous. ***Id.*** at 908. In addition, if we determine that the issues raised by counsel are frivolous, we then proceed to "conduct an independent review of the record to discern if there are any

---

[2] As of the date of this decision, Mother has not filed a *pro se* brief with this Court, nor has privately retained counsel entered an appearance on Mother's behalf.

- 9 -

additional, non-frivolous issues overlooked by counsel." *Id.* (quoting

*Commonwealth v. Flowers*, 113 A.3d 1246, 1250 (Pa. Super. 2015)).

Counsel raises the following issues in her brief:

[1.] Whether or not the Lower Court erred as a matter of law and/or abused its discretion in finding that clear and convincing evidence existed to find the minor child dependent based on the minor child being without proper care and control, subsistence, education as required by law, or other care, or control necessary for her physical, mental, or emotional health or morals.

[2.] Whether or not the Lower Court erred as a matter of law and/or abused its discretion in finding that clear and convincing evidence existed to find the minor child dependent based on the minor child being subject to compulsory school attendance and is habitually and without justification truant from school.

[3.] Whether or not the Lower Court erred as a matter of law and/or abused its discretion in finding that it was in the minor child's best interests to be removed from the home of Mother and Father.

*Anders* Brief, at 4.

We review a trial court's ruling in a dependency matter for an abuse of discretion. *In re R.J.T.*, 9 A.3d 1179, 1190 (Pa. 2010); *In re A.B.*, 63 A.3d 345, 349 (Pa. Super. 2013). We accept the trial court's findings of fact and credibility determinations when supported by the record, but we are not required to accept the lower court's inferences or conclusions of law. *R.J.T.*, 9 A.3d at 1190; *A.B.*, 63 A.3d at 349. "[W]e accord great weight to the court's fact-finding function because the court is in the best position to observe and rule on the credibility of the parties and witnesses." *In re A.W.*, 162 A.3d

1117, 1120 (Pa. Super. 2017) (quoting *In re D.P.*, 972 A.2d 1221, 1225 (Pa. Super. 2009))

As relevant to this case, the Juvenile Act defines a "dependent child," as a child who:

> (1) is without proper parental care or control, subsistence, education as required by law, or other care or control necessary for his physical, mental, or emotional health, or morals. A determination that there is a lack of proper parental care or control may be based upon evidence of conduct by the parent, guardian or other custodian that places the health, safety or welfare of the child at risk, including evidence of the parent's, guardian's or other custodian's use of alcohol or a controlled substance that places the health, safety or welfare of the child at risk;
>
> * * * *
>
> (5) while subject to compulsory school attendance is habitually and without justification truant from school;

42 Pa.C.S. § 6302. Under the Public School Code of 1949, a student is of compulsory school age from ages six to eighteen. 24 P.S. §§ 13-1326 (defining "compulsory school age"), 13-1327(a) (requiring compulsory school attendance). A child subject to compulsory school attendance is habitually truant if she has six or more unexcused absences during the current school year. 24 P.S. § 13-1326 (defining "habitually truant"). Proper parental care is defined in our caselaw as care that is geared towards the particularized needs of the child and, at a minimum, is likely to prevent serious injury to the child. *A.B.*, 63 A.3d at 349; *In re C.R.S.*, 696 A.2d 840, 845 (Pa. Super. 1997). "[W]hen determining whether a parent is providing a minor with proper care and control . . . the caretaker's acts and omissions should weigh

equally." *In re R.P.*, 957 A.2d 1205, 1217 (Pa. Super. 2008) (citation and emphasis omitted).

After conducting a hearing, the trial court may find a child dependent if clear and convincing evidence has been presented that the child meets the statutory definition. 42 Pa.C.S. § 6341(a); *In re L.Z.*, 111 A.3d 1164, 1176 (Pa. 2015); *In re E.B.*, 898 A.2d 1108, 1112 (Pa. Super. 2006). Clear and convincing evidence has been defined as evidence that is "so clear, direct, weighty, and convincing as to enable the trier of facts to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue." *A.B.*, 63 A.3d at 349 (citation omitted).

Upon finding a child dependent, the court must then enter an order of disposition that is "best suited to the safety, protection and physical, mental, and moral welfare of the child." 42 Pa.C.S. §§ 6341(c), 6351(a). If the court determines that removal of the dependent child from her home is appropriate, it must make findings that continuation in the home would be contrary to her welfare, safety, or health and further that reasonable efforts were made to eliminate the need for the child's removal. 42 Pa.C.S. § 6351(b)(1), (2). This Court has explained:

> The law is clear that a child should be removed from her parent's custody and placed in the custody of a state agency only upon a showing that removal is clearly necessary for the child's well-being. In addition, this court had held that clear necessity for removal is not shown until the hearing court determines that alternative services that would enable the child to remain with her family are unfeasible.

***A.B.***, 63 A.3d at 349-50 (citation omitted); ***see also In re A.N.***, 39 A.3d 326, 331 (Pa. Super. 2012).

The first two issues raised by counsel concern whether the trial court properly adjudicated Child dependent under paragraph 1 of the Juvenile Act's definition of a dependent child, related to proper parental care or control, and also under paragraph 5, related to habitual truancy. ***See*** 42 Pa.C.S. § 6302. We agree with counsel that the Agency presented clear and convincing evidence on each of these grounds and that any challenge to the dependency adjudication would be frivolous.

First, with respect to the question of whether Child was "without proper parental care or control . . . necessary for h[er] physical, mental, or emotional health, or morals," ***id.***, the evidence at the April 21, 2023 hearing showed that Mother allowed Child, who has been diagnosed with Down syndrome, to wander unattended in public twice within a six-month period with both of these incidents leading to a police response. N.T., 4/21/23, at 8-12, 30. Testimony was also presented showing that two of Mother's relatives indicated that Mother suffered from apparent mental health issues, with Grandmother specifically reporting that Mother had falsely accused Grandmother of poisoning Child. ***Id.*** at 31-35. Additional testimony demonstrated that Mother refused multiple requests by police, the Agency, and the GAL to verify Child's safety, and Mother also failed to appear or bring Child to the adjudication hearing, notwithstanding being directed to do so in a court order. ***Id.*** at 3-5, 10, 13, 30-31; Order and Summons, 4/6/23, at 1-2. Such

evidence provides clear and convincing support for the trial court's adjudication of Child as dependent based upon inadequate parental care or control by Mother that placed Child's health, safety, and welfare at risk. ***See*** 42 Pa.C.S. § 6302 ("A determination that there is a lack of proper parental care or control may be based upon evidence of conduct by the parent, guardian or other custodian that places the health, safety or welfare of the child at risk . . ."); ***A.B.***, 63 A.3d at 349 (providing that a parent's proper parental care and control must be measured according to "the particularized needs of the child"); ***R.P.***, 957 A.2d at 1217 (a caretaker's omissions should be assessed equally to her voluntary acts in dependency proceeding).

Turning to the question of whether Child was appropriately adjudicated dependent based upon habitual truancy, ***see*** 42 Pa.C.S. § 6302 (a dependent child is one who, "while subject to compulsory school attendance[,] is habitually and without justification truant from school"), the evidence at the hearing showed that Child was twelve years' old during the 2022-2023 school year and therefore was subject to compulsory school attendance under the Public School Code. 24 P.S. §§ 13-1326, 13-1327(a). Child also far exceeded the statutory threshold for habitual truancy of six or more unexcused absences during a school year, 24 P.S. § 13-1326, as the testimony of the cyber charter school representative established that the school had recorded Child having 95 unexcused absences (and 3 excused absences) out of approximately 100 days during the current school year. N.T., 4/21/23, at 17-20. Further, Child had not been seen on screen by school staff at any point during the school

year. *Id.* at 19. Mother refused any contact with the school such that she could have justified Child's unexcused absences, including by failing to attend Child's IEP meeting and a conference specifically convened to discuss Child's attendance issues. *Id.* at 23-24. Mother also failed to appear at the adjudication hearing to explain Child's attendance record. The Agency thus demonstrated by clear and convincing evidence that Child, who was "subject to compulsory school attendance," was "habitually and without justification truant from school." 42 Pa.C.S. § 6302; *In re C.M.T.*, 861 A.2d 348, 353-54 (Pa. Super. 2004) (agency establishes habitual truancy through school attendance records showing that absences are unexcused, which raises an inference that the absences are "without justification" that may be rebutted by the parent or child).

Concerning counsel's third issue related to Child's removal from Mother's home, the trial court determined that removal was in Child's best interests because Child was unsafe in the home due to Mother's mental health issues, her inadequate supervision of Child, the fact that her educational needs were not being met, and the current inability of the Agency to verify Child's wellbeing.[3] N.T., 4/21/23, at 43-44; Order of Adjudication and Disposition,

---

[3] As the trial court aptly summarized:

> [A] primary safety concern is [Mother's] possible danger to [C]hild due to [Mother's] alleged mental health issues and inability to confirm whether [C]hild's medical needs are being met. The Agency was unable to assess the severity of [Mother's] instability or whether medical care was provided to [C]hild due to [Mother's] unwillingness to communicate

*(Footnote Continued Next Page)*

4/21/23, at 2; Trial Court Opinion, 6/6/23, at 11-13; *see also* 42 Pa.C.S. § 6351(a), (b)(1) (disposition ordered by court must be "best suited to the safety, protection and physical, mental, and moral welfare of the child" and an order of removal must be supported by finding that continuation in the home would be contrary to child's welfare, safety, or health); *A.B.*, 63 A.3d at 349 (removal must be based upon finding that such action is "clearly necessary for the child's well-being") (citation omitted).  The trial court further determined that the Agency made reasonable efforts to prevent removal based upon its various attempts to meet with Mother and Child that were refused, the inability to locate suitable kinship resources, and the fact that Father could not be located at the time of the adjudication hearing.  N.T.,

---

or cooperate in any way.  [Mother] has placed [C]hild in harm's way multiple times [by] allowing [C]hild to wander through the streets of the neighborhood . . .

Any uncertainty surrounding the safety of [C]hild directly stems from [Mother's] conscious effort to keep [C]hild from being seen by the police, the Agency, [her s]chool, and the trial court alike.[12]  Safety of the child is the primary consideration in removing a child from the home.  Absent any evidence to the contrary, the trial court was required to take steps to ensure that [C]hild was safe from harm.  The trial court submits that it was in the best interest of [C]hild to remove her temporarily from the custody of her mother to ensure her safety until further safety assessments could be made, and appropriate services could be put in place.

[FN 12] [Mother] not only failed to appear before the court, but also repeatedly failed to make [C]hild available to her GAL. [C]hild's GAL expressed that there were significant safety concerns about the circumstances surrounding [C]hild's unavailability.

Trial Court Opinion, 6/6/23, at 11-13 (record citations omitted).

4/21/23, at 43, 46-47; Order of Adjudication and Disposition, 4/21/23, at 2-3; Trial Court Opinion, 6/6/23, at 10-11; *see also* 42 Pa.C.S. § 6351(b)(2) (trial court may not order a child's removal absent finding that reasonable efforts were made to eliminate the need for the removal); *A.B.*, 63 A.3d at 349-50 (removal is not appropriate unless trial court finds that alternative services that would enable child to remain with family are unfeasible). We conclude that the trial court's dispositional ruling was supported by the clear and convincing evidence outlined above and was proper under the Juvenile Act and related caselaw. Accordingly, any challenge to that ruling would be frivolous.

Based on the foregoing, we agree with counsel that the issues raised in the *Anders* brief are wholly frivolous and that the trial court acted within its discretion in adjudicating Child dependent and ordering her removal from Mother's home. In addition, we have reviewed the certified record and have discovered no additional non-frivolous issues. Therefore, we grant counsel's petition to withdraw and affirm the trial court's April 21, 2023 order.

Order affirmed. Petition to withdraw granted.
Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 10/20/2023