J-A17031-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT OP 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: S.G. A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: L.G., FATHER | : | No. 2967 EDA 2022 |

Appeal from the Order Entered November 10, 2022
In the Court of Common Pleas of Philadelphia County
Juvenile Division at No(s):  CP-51-DP-0000908-2022

BEFORE:   KING, J., SULLIVAN, J., and PELLEGRINI, J.[*]

MEMORANDUM BY KING, J.:                    **FILED NOVEMBER 7, 2023**

Appellant, L.G. ("Father"), appeals from the order entered in the Philadelphia County Court of Common Pleas, which adjudicated his minor child, S.G. ("Child") dependent.  We affirm.

The trial court set forth the relevant facts and procedural history of this case as follows:

> The Philadelphia Department of Human Services ("DHS") first became aware of this family on October 5, 2022 when it received a General Protective Services ("GPS") report alleging that [D.G. ("Mother")] was visibly high when she came to the hospital and remained high throughout her delivery until the next day.  Mother was unable to speak without significant slurring and was poorly responsive. Mother tested positive for cocaine, marijuana, and opiates. On October 13, 2022, DHS received another GPS report because Child tested positive for cocaine.  Child had to remain in the hospital due to withdrawal symptoms.  Father

_____

[*] Retired Senior Judge assigned to the Superior Court.

denied drug and alcohol history, but refused to comply with a drug and alcohol screen. DHS obtained an Order of Protective Custody ("OPC") on October 17, 2022 for Child and placed Child into foster care. A shelter care hearing was held on October 19, 2022, at which time the court ordered that the Child remain in the temporary legal custody of DHS and in the home of her foster care.

[The trial court] held the relevant adjudicatory hearing on November 10, 2022. Mother and Father were present at said hearing with court-appointed counsel. Paula Ward, DHS intake supervisor, testified that Child was one-month old during the adjudicatory hearing. Ms. Ward testified that on October 5, 2022 a GPS report was received which alleged that Mother arrived at the hospital extremely high, and she was high until the next day. She stated that initially only Mother tested positive for cocaine, opiates, and marijuana, however, within a week, Child was showing signs of withdrawal. She testified that Child tested positive for cocaine. Ms. Ward testified that she personally spoke with Mother who stated she was willing to go to Caring Together for a drug assessment and a drug program. She stated that Mother did enroll in the program.

As for Father, Ms. Ward stated that she had drug and alcohol concerns with Father because of Mother's high drug uses, there was a concern that if Father did not notice that Mother was using drugs, he may be using drugs as well. Ms. Ward testified that Father stated he went for a drug test and completed the assessment but failed to provide confirmation documents. As for Father's employment, Ms. Ward testified that Father stated he owns a kennel and works with cars. She stated that Father said he would be able to work and watch the baby at the same time. Ms. Ward further testified that if Father would have taken a drug test, the agency would have considered returning Child to his care. She indicated that it would be wrong to return child to Father without a negative drug screen.

Maya Wilson, Community Umbrella Agency ("CUA") case manager, testified that she referred Mother to the Clinical Evaluation Unit ("CEU") for a screen. Ms. Wilson testified that the results of the drug screen dated 10/27/2022 [were] positive for benzos and marijuana. She testified that she

has seen Father's home prior to Mother moving out but has not seen the home since Mother reportedly moved. Ms. Wilson stated that Father's home was appropriate and that there were items for the Child to be properly cared for. She further stated that she did not have concerns with Father being the caregiver for Child because he was home during the day. Ms. Wilson also testified that she was aware of Mother being in a drug program and nothing has been reported to her regarding Mother. She stated that Mother told her she was on prescription drugs but failed to provide any scripts.

Kristen Abney, DHS Social Worker, testified that she was the worker that opened the case initially. Ms. Abney testified that she saw Mother in the hospital the next day, following the birth of Child, so she could not confirm or deny whether or not Mother was extremely high. She stated that Mother told her she was in a drug and alcohol program prior to COVID and then the classes stopped. She also stated that Mother told her about a car accident she had in the beginning of 2022, which brought back the drug concern. Ms. Abney testified that she had an opportunity to speak with Father but did not have any concerns with him. She further testified that when she initially was assigned the case, Mother and Father lived together. She stated that Father told her he worked on cars and he worked from home.

At the conclusion of the adjudicatory hearing, [the] court adjudicated Child dependent based on present inability and ordered for Child to remain as committed and as placed. Father was ordered to go to CEU, forthwith screen and three randoms prior to the next court date. Father was also ordered to go to the Achieving Reunification Center ("ARC") for parenting classes. Father was granted two weekly supervised visits at the agency, if unable to work out visitation with the resource parent. Additionally, this [c]ourt ordered, if Father's screen after the hearing was negative, Father would be allowed unsupervised community visits or family school with Child.

(Trial Court Opinion, filed 3/14/23, at 1-4) (internal citations omitted). Father

timely filed a notice of appeal and contemporaneous Pa.R.A.P. 1925(a)(2)(i)

concise statement on November 28, 2022.

Father raises the following issues for our review:

Whether the trial court erred in deciding the evidence as having been sufficient for a finding of adjudication (for dependency).

Additionally, whether the trial court had erred in determining the evidence to further have been sufficient for the removal of Child, resulting thereto for the placement into agency custody.

From an evidentiary standpoint, whether the trial court had erred in admitting into evidence a certain out-of-court utterance concerning the supposed use of drugs by [Father].

Thus, whether the trial court had erred in requiring [Father] to undergo a forthwith drug and alcohol screen; as well as subsequent random screens.

(Father's Brief at 5).

In his first two issues combined, Father asserts that although Mother has significant issues with alcohol and substance abuse, Mother no longer resides with Father. Father avers that his home was inspected by Ms. Wilson and deemed appropriate, containing the necessities to properly care for Child. Father further claims that both Ms. Wilson and Ms. Abney testified that there were no concerns with Father's ability to care for Child. Father contends that there is no reliable evidence that Father abuses drugs or alcohol and the court erred in holding him culpable for Mother's addiction. Father concludes the court erred in finding clear and convincing evidence to warrant adjudicating Child dependent and placing Child in DHS custody. We disagree.

The applicable scope and standard of review for dependency cases is as

follows:

> [T]he standard of review in dependency cases requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record, but does not require the appellate court to accept the [trial] court's inferences or conclusions of law. Accordingly, we review for an abuse of discretion.

*In re A.B.*, 63 A.3d 345, 349 (Pa.Super. 2013) (quoting *In re R.J.T.*, 608 Pa. 9, 26-27, 9 A.3d 1179, 1190 (2010)).

> We accord great weight to this function of the hearing judge because [the court] is in the position to observe and rule upon the credibility of the witnesses and the parties who appear before [the court]. Relying upon [the court's] unique posture, we will not overrule [its] findings if they are supported by competent evidence.

*In re A.H.*, 763 A.2d 873, 875 (Pa.Super. 2000). *See also In re R.J.T., supra* (explaining that appellate court is not in position to make "close calls" based on fact-specific determinations; trial judges observe parties during hearing and usually have presided over several other hearings with same parties and have longitudinal understanding of case and best interests of individual child involved; thus, even if appellate court would have made different conclusion based on cold record, we are not in position to reweigh evidence and credibility determinations of trial court).

The Juvenile Act defines a dependent child, in pertinent part, as follows:

**§ 6302. Definitions**

* * *

**"Dependent child."** A child who:

(1)  is without proper parental care or control, subsistence, education as required by law, or other care or control necessary for his [or her] physical, mental, or emotional health, or morals.  A determination that there is a lack of proper parental care or control may be based upon evidence of conduct by the parent, guardian or other custodian that places the health, safety or welfare of the child at risk, including evidence of the parent's, guardian's or other custodian's use of alcohol or a controlled substance that places the health, safety or welfare of the child at risk[.]

42 Pa.C.S.A. § 6302.

A court may adjudicate a child as dependent if the child meets the statutory definition of a dependent child by clear and convincing evidence.  *In re E.B.*, 898 A.2d 1108, 1112 (Pa.Super. 2006).  Additionally, "[a] finding of dependency can be made based on prognostic evidence and such evidence is sufficient to meet the strict burden of proof necessary to declare a child dependent."  *In re R.W.J.*, 826 A.2d 10, 14 (Pa.Super. 2003).  "The court must make a comprehensive inquiry into whether proper parental care is immediately available or what type of care [the parent] could provide in the future."  *Id.*

If the court finds that the child is dependent, then the court may make an appropriate disposition of the child to protect the child's physical, mental and moral welfare, including allowing the child to remain with the parents subject to supervision, transferring temporary legal custody to a relative or a private or public agency, or transferring custody to the juvenile court of another state.

*In re E.B., supra* at 1112.

Upon a finding of dependency, the court must focus on the child's best interests and order a disposition best suited to the child's safety and well-

- 6 -

being.  *In re S.B.*, 943 A.2d 973 (Pa.Super. 2008), *appeal denied*, 598 Pa. 782, 959 A.2d 320 (2008); *In re L.C., II*, 900 A.2d 378, 381 (Pa.Super. 2006).  The court may not separate the child from the parent unless it finds that the separation is clearly necessary.  *In re G.T.*, 845 A.2d 870 (Pa.Super. 2004).  Such necessity is implicated where the child's welfare, safety, or health demands he or she be taken from his or her parent's custody.  *Id.*; *In re R.W.J., supra*.

Instantly, the court concluded that Father was presently unable to properly care for Child or keep Child safe.  Specifically, the court determined that Father either knew about Mother's serious substance abuse while she was pregnant and failed to take action to protect Child, or Father participated in the substance abuse with Mother, both of which raise serious questions about Father's ability to parent and keep Child safe.  The court explained:

> Father and Mother were a couple and lived together when Child was born.  Mother was visibly high when she came to the hospital for childbirth and remained high throughout her delivery until the next day.  Mother tested positive for cocaine, marijuana, and opiates.  Child also tested positive for cocaine and experienced withdrawal symptoms while in the hospital.  [Ms. Ward] stated that she had drug and alcohol concerns with Father because of Mother's high drug uses.  There was a concern that if Father did not notice that Mother was using drugs, he may be using drugs as well.  Father has not provided the agency with a negative drug screen.  DHS would have considered returning Child to Father's care if he would have returned a negative drug screen.  Furthermore, when Mother and Father lived together, Father worked from home and should have noticed Mother's substance abuse prior to Child's birth.  Because of the seriousness of Mother's substance abuse and Father's failure to provide a negative drug screen, the court

does not believe Father or Mother can keep Child safe.

(Trial Court Opinion at 6).

The record supports the court's findings. We agree with the court that Father's actions placed the health, safety or welfare of Child at risk. *See* 42 Pa.C.S.A. § 6302; *In re E.B., supra*. Furthermore, Father's refusal to provide the results of a drug screen, in light of Mother's substance abuse while pregnant with Child and living with Father, supports the court's conclusion that separation from Father was necessary to keep Child, a vulnerable, substance-exposed newborn, safe. *See In re G.T., supra*. Accordingly, we discern no abuse of discretion in the court's adjudication of Child as dependent and placement of Child in DHS custody. *See In re A.B., supra*; *In re A.H., supra*.

In his third issue, Father contends the court improperly relied on unreliable hearsay evidence to conclude that Father abused drugs and alcohol. Specifically, Father asserts that the court erroneously permitted Ms. Abney to testify that DHS had received previous reports about Father's drug use. Father argues that this out-of-court statement was offered for the truth of the matter asserted and was impermissible hearsay. Father insists the error was not harmless because the court raised concerns that Father was abusing drugs and alcohol as its rationale for concluding that Father could not presently keep Child safe. Father concludes the court erred in relying on impermissible hearsay evidence as the basis for adjudicating Child dependent. We disagree.

"The admission of evidence is within the discretion of the trial court and such decisions will be reversed only if the trial court has abused its discretion." ***Interest of I.R.-R.***, 208 A.3d 514, 519 (Pa.Super. 2019) (quoting ***In re Adoption of R.K.Y.***, 72 A.3d 669, 675 (Pa.Super. 2013)). "The Rules of Juvenile Court Procedure provide that in adjudications, each party shall have an opportunity to present evidence subject to the rules of evidence." ***Id.*** (citing Pa.R.J.C.P. 1406(C), cmt.)

Hearsay is an out-of-court statement made by a declarant, which a party seeks to offer into evidence to prove the truth of the matter asserted in the statement. Pa.R.E. 801(c). Generally, hearsay is not admissible except as provided by the Pennsylvania Rules of Evidence, by other rules prescribed by the Pennsylvania Supreme Court, or by statute. Pa.R.E. 802. Nevertheless, "[a]n out-of-court statement is not hearsay when it is introduced purely for the purpose of establishing that the statement was made and not to establish its truth. Likewise, an out-of-court statement is not hearsay if it is offered to explain a course of conduct or to reflect the declarant's state of mind." ***Interest of I.R.-R., supra***.

Here, counsel for Mother asked Ms. Abney if any concerns of substance abuse by Father were brought to her attention. Father's counsel objected on the grounds that any response would be hearsay, and the court overruled the objection. The following exchange then took place:

> **Ms. Abney:** —so, yes, there were previous concerns that we discussed as a team, due to previous reports, but

nothing—

**[Father's Counsel]:** Objection: hearsay.

**Ms. Abney:** —nothing current.

**The Court:** Overruled.

**[Father's Counsel]:** "Previous reports"

**[Mother's Counsel]:** And you said nothing current?

**Ms. Abney:** (Unintelligible) like, right now. I know there was — they were supposed to take the drug test, but I believe, even in the last court, that was up to him, and I haven't heard anything more since then.

(N.T. Dependency Hearing, 11/10/22, at 29-30). The court determined that the statement was "not considered hearsay because it [was] within the personal knowledge of the DHS worker who initiated the investigation and [was] not used to prove the truth of the matter asserted." (Trial Court Opinion at 10). Moreover, the court explained that its concerns over Father's potential substance abuse did not stem from this statement but from the uncontroverted evidence of the circumstances surrounding Child's birth and Father's failure to present the results of a drug screen in light of those circumstances. (*See id.*). Thus, the court stated that even if it improperly admitted the reference to "prior reports" about Father's drug use, any error was harmless. (*Id.*) We agree with the court that even if the evidentiary ruling was improper, any error was harmless. *See Interest of K.P.*, Nos. 1735 EDA 2021, 1736 EDA 2021 (Pa.Super. filed Apr. 5, 2022) (unpublished

memorandum)[1] (holding even if caseworker's comment that mother tested positive for drugs on "more than one occasion" was improper hearsay testimony, error was clearly harmless where court did not rely on challenged evidence to reach its decision).

In his fourth issue, Father argues the court had no authority to order him to submit to a drug test. Father contends the court erred in considering the fact that Father did not produce the results of a drug screen as a factor in determining adjudication because "nothing under the law would have required [Father]'s submission [to a drug test.]" (Father's Brief at 15). Father concludes "that as a general proposition, refusal to [submit to a] drug screen may not be considered as a basis for dependency" and accordingly, we should vacate the court's adjudication of dependency. (*Id.* at 15). We disagree.

Once a child is adjudicated dependent, a court may enter "orders of disposition best suited to the safety, protection and physical, mental, and moral welfare of the child." 42 Pa.C.S.A. §6351(a). The court shall include in its order "[a]ny orders as to any aids in disposition that may assist in the preparation of the dispositional hearing." Pa.R.J.C.P. 1409(c). "[A]ids in disposition may include, but are not limited to, any services, investigations, evaluations, studies, treatment plans, and any other appropriate reports that may aid the court in making its determination at the dispositional hearing."

---

[1] *See* Pa.R.A.P. 126(b) (stating we may rely on unpublished decisions of this Court filed after May 1, 2019 for their persuasive value).

*Id.*, cmt.

Instantly, after the court adjudicated Child dependent, it established the permanency goal as "return to parent or guardian." In furtherance of this goal, the court referred both parents to the CEU for a forthwith drug screen and three random drug screens, and to the ARC for parenting classes. These dispositional orders were made to facilitate a safe reunification of Child with parents and to assist the court with making decisions best suited to Child's safety, protection, and welfare. **See** Pa.R.J.C.P. 1409(c). As such, we see no merit to Father's argument that the court was without authority to order Father to submit to a drug screen after Child's adjudication of dependency.

Additionally, Father's claim that the court could not consider his refusal to submit the results of a drug screen as a factor in its dependency determination is also without merit. Father relies on **In Interest of DR**, 216 A.3d 286 (Pa.Super 2019) to support his assertion. In **In Interest of DR**, the Fayette County Children and Youth Services Agency ("CYS") petitioned the court to order the father to submit to a drug test as a part of its investigation, prior to filing a dependency petition. This Court held that "in a CYS investigation conducted **prior to a dependency adjudication**—there is no legislative underpinning that authorizes the court to order the drug testing of a parent." *Id.* at 296 (emphasis added). Here, DHS did not petition the court to order Father to submit to drug test nor did the court enter such an order prior to adjudicating Child dependent. Father was merely asked by DHS to

voluntarily submit to a drug screen to eliminate concerns of drug use. Thus, Father's reliance on *In Interest of D.R.* is misplaced.

While the court considered Father's refusal to submit the results of a drug test as part of the evidence presented before it, the court did not make its determination on this fact alone. Rather, the evidence shows that Father was living with Mother, who was visibly high when giving birth to Child. Testing revealed that Mother was under the influence of cocaine, opiates and marijuana at the time of Child's birth and Child was exposed to amphetamines, benzodiazepines, cannabinoids, marijuana, cocaine, oxycodone and Percocet in utero. Additionally, Ms. Ward testified that Father stated that he took a drug test but failed to present the results of such a drug test to DHS or the court to eliminate concerns of drug use, even though DHS stated that it would consider returning Child to Father's care if he presented a negative drug screen. Under these circumstances, we see no merit to Father's claim that the court was not permitted to consider this evidence. Such evidence was relevant to the court's determination of whether Child was without parental care or control. Therefore, Father's final issue merits no relief. Accordingly, we affirm the order adjudicating Child dependent.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


Date: <u>11/7/2023</u>